## PENNEY & LONG, Inc., v. COMMISSIONER OF INTERNAL REVENUE.

No. 2926.

Circuit Court of Appeals, Fourth Circuit.

April 8, 1930.

Julius C. Smith, of Greensboro, N. C. (E. S. Parker, Jr., of Greensboro, N. C., on the brief), for petitioner.

A. H. Conner, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for respondent.

Before PARKER and NORTHCOTT, Circuit Judges, and HAYES, District Judge.

NORTHCOTT, Circuit Judge.

This is an appeal from an order of redetermination of the Board of Tax Appeals, involving a deficiency in income and profits tax in the amount of $23,934.94, for the calendar year 1920, under the Revenue Act of 1918, which reads in part as follows:

"Sec. 202. (a) That for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, the basis shall be * * *

"(b) When property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any. * * * " 40 Stat. 1060.

In May, 1926, the Commissioner of Internal Revenue assessed additional tax against petitioner for income and excess profits taxes, in the above amount, for the calendar year 1920. From this finding of the Commissioner, petitioner appealed to the Board of Tax Appeals on two grounds: (1) That the Commissioner erred in holding that it realized the profit of $50,125 upon a sale of the contract, hereinafter mentioned; and (2) in excluding the price paid by the petitioner for the contract referred to in the first assignment, in the invested capital of the petitioner. The Board, after hearing, sustained the finding of the Commissioner, from which action this appeal was taken.

No transcript of the evidence is in the record, and reliance must be had upon the findings of fact promulgated by the Board, which the petitioner agrees are binding upon it.

The pertinent facts found by the Board are as follows: That in May 1919, a partnership, composed of C. B. Penney, Ralph Long, R. J. Mebane, and J. E. Rossell, was organized, under the firm name of Penney & Long, for the purpose of acting as distribu-

tor in several Southern states for automobiles manufactured by the American Motors Corporation. Each of the four partners contributed $3,000 cash to the capital of the partnership. A distributor's contract was secured, without any cost to the partnership.

Petitioner corporation was organized on September 12, 1919, for the purpose of taking over the partnership assets and business. The four partners sold and transferred to the petitioner corporation their business, and all assets, consisting of the contract in question, cash in bank, accounts receivable, notes receivable, used cars, and furniture and fixtures, in consideration of the issue to each of them of class A common stock of a par value of $12,500, and class B common stock of a par value of $31.25, an aggregate par value of $50,125.

Fifteen or sixteen automobiles were sold by the partnership, between the organization of the partnership and the organization of the petitioner corporation. That, while no appraisal was made of, nor any specific value placed on, the contract with the American Motors Corporation, the partners, who also controlled a majority of the stock of petitioner, considered that stock of the par value of $12,000 was in payment for the tangible assets and the return of their original contributions of $3,000 each, to the partnership capital, and the balance was in payment for the contract.

That between September 18, 1919, and March 16, 1920, the petitioner sold shares of its class A common stock, of a total par value of $48,250, for cash and notes, at par, and of the total amount so disposed of, shares of a total par value of $27,500 were sold within the first thirty days after organization. All of this stock was sold to relatives, friends, and business associates of the former partners, and upon the solicitations of the latter. None of petitioner's capital stock was offered for sale to the general public. Purchasers of this stock were made acquainted with all of the details of the distributor's contract which the petitioner had acquired; and though, in soliciting their subscriptions for stock, no specific value was placed upon the contract, representations were made to them that, because of its favorable discount terms, the excellent territory allotted, and the shortage of automobiles within that territory, the contract offered very great possibilities of making large profits.

In July, 1920, the petitioner assigned the distributor's contract to the American Southern Motors Corporation in exchange for $50,125 par value of that company's capital stock. This stock was sold by the petitioner in 1920, for $50,125 cash.

Shortly after the petitioner acquired the business, the American Motors Corporation made a change in the model of cars they were producing. The new model proved very unsatisfactory mechanically, and resulted in the bankruptcy of the manufacturers early in 1921.

At the hearing before the Board petitioner abandoned its contention as to point 2, and admitted that, under the provisions of section 331 of the Revenue Act of 1918 (40 Stat. 1095), the partners having retained more than 50 per centum of the stock of petitioner corporation, petitioner had no right to include any part of the purchase price paid for the contract in its invested capital.

■■ In its opinion sustaining the action of the Commissioner in holding the entire sum realized by petitioner on the sale of the contract to the American Southern Motors Corporation to be profit, the Board of Tax Appeals bases its conclusion on the fact that no fixed or definite price that the petitioner paid for the contract was proven. With this conclusion we cannot agree. It is true that the finding of the Commissioner is prima facie correct, and the burden of proving its incorrectness is on the taxpayer, Brooks v. Commissioner of Internal Revenue (C. C. A.) 35 F.(2d) 178, and authorities there cited. This burden, however, we believe to have been carried by petitioner in the hearing before the Board, and we reach this conclusion from the findings of fact made by the Board itself.

The original partnership received stock of the par value of $50,125 for the contract and the other property of the partnership. It appears from the finding of fact that the other property of the partnership could not possibly have exceeded in value $12,000, as that was the total amount paid in by the four partners, and the business had been conducted as a partnership from May to September, during which time only fifteen or sixteen automobiles had been sold. It is evident, therefore, that, taking into consideration the expense of conducting business for that length of time and the small number of sales made, the physical property of the partnership could not have increased in amount above the original investment, and that the price fixed on the contract in the transfer from the partnership to the petitioner company was at least $38,000, possibly more. Stock similar to that given to the partners for the property of the partnership was sold in a comparative large quantity at par.

It is true it was sold largely to friends and relatives of the incorporators of the petitioner company, but we think it only fair to assume that that which brought par in even the limited market was worth par to the petitioner when given by it as consideration for the contract. We, therefore, reach the conclusion, which seems to us not only proper but inevitable, that the price not only agreed on but paid for the contract in the first transfer was, at least, $38,000. One or more of the partners testified to these facts before the Board. In addition to this, within a year from the date of the acquiring of the contract by the petitioner company, it exchanged it, and nothing else, for stock of the par value of $50,125, which stock was shortly afterwards sold by the petitioner for $50,125 cash.

The very language of the statute itself, "to the amount of its fair market value," presupposes the making of some estimate and the exercise of some judgment on the part of the Commissioner in finding, from all the circumstances, what a "fair market value" may have been. Here we have present every element of proof that would not only justify but, in all fairness, compel the Commissioner to fix as a "fair market value" of the stock issued by the petitioner, in payment for the contract, the sum of $38,000.

We conclude, therefore, that, at the time of the purchase of this contract by petitioner, the contract had a real value whatever may have been its future history; that that value was not less than $38,000; that, when petitioner realized from the sale of the contract $50,125, its profits on the sale were not more than $12,125, and not $50,125, as fixed by the Commissioner and the Board of Tax Appeals.

The transactions between the partnership and the petitioner corporation, in the absence of fraud, were legal under the laws of the state of North Carolina, in which state the petitioner was incorporated. See Gover v. Malever, 187 N. C. page 774, 122 S. E. 841. It is well settled as a principle of the law that in construing tax statutes well-founded doubts engendered in attempting to apply the statute must be resolved in favor of the taxpayer. State of Ohio v. Harris (C. C. A.) 229 F. 892, and authorities there cited.

For the reasons above stated, the action of the Board of Tax Appeals is reversed, and this cause is remanded to the court below to be further proceeded with in accordance with the opinion above expressed.

Reversed.