### RICE v. EISNER, Collector. *

(Circuit Court of Appeals, Second Circuit. December 24, 1926.)

No. 34.

1. **Internal revenue** ⬅7(10)—**Appreciation in value of property given to taxpayer held part of taxable "income" under statute (Act Oct. 3, 1913, § 2, subd. B [38 Stat. 167]).**

Under Act Oct. 3, 1913, § 2, subd. B (38 Stat. 167), the appreciation in value of property given to a taxpayer is part of his taxable "income," in view of Act Sept. 8, 1916, §§ 2 (a) (c), 4 (Comp. St. §§ 6336b, 6336d); Act Feb. 24, 1919, § 202; and Act Nov. 23, 1921, § 202. (a) (2), being Comp. St. § 6336⅛bb.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Income.]

*Certiorari denied 47 S. Ct. 477, 71 L. Ed. —.

**2. Internal revenue ⊫38(12)—Evidence held to sustain finding of value of corporate stock given taxpayer, in action to recover income tax on appreciation in value thereof.**

In action to recover income tax on the appreciation in value of corporate stock given to taxpayer, evidence *held* sufficient to support finding of jury as to value of shares when received by taxpayer.

**3. Evidence ⊫323(4)—"Bid and asked" quotations from financial journal held admissible in action involving value of corporate stock.**

In action to recover income tax, involving the value of corporate stock at time of gift to taxpayer, "bid and asked" quotations from accepted financial journals *held* competent.

**4. Internal revenue ⊫38(12)—Plaintiff, suing to recover income taxes paid under duress, has burden of proof.**

Plaintiff, in action to recover taxes paid under duress, has burden of proof that defendant extorted money which he was not entitled to.

**5. Trial ⊫267(1)—Judge is not compelled to use language of requests in charge.**

Requests to charge do not oblige judge to use the language chosen, and it is only when judge has misconceived the law at large that requests can be basis for reversing judgment.

**6. Internal revenue ⊫38(11)—Interest on sum refunded by Commissioner before suit cannot be recovered, in absence of appropriate prayer or motion for trial amendment.**

Omission of complaint for recovery of taxes to ask for interest on amount refunded before suit, and absence of motion to amend during trial, precludes recovery of such interest.

**7. Internal revenue ⊫38(15)—Taxpayer's receipt for refund reserving right to recover "additional sum" held not to reserve claim for interest on amount refunded by Commissioner.**

Taxpayer's receipt for taxes refunded by Commissioner, reserving "her right, if any, to recover any additional sum for which suit might thereafter be brought," *held* not to reserve to her, in subsequent suit for additional refund, the right to recover interest on amount refunded by Commissioner.

In Error to the District Court of the United States for the Southern District of New York.

Action by Julia Barnet against Mark Eisner, as Collector, etc. Judgment for plaintiff in unsatisfactory amount, and she brings error. Affirmed.

The complaint was at law for money paid under duress to a tax collector in discharge of the plaintiff's income tax, as assessed for the year 1915 under the Act of October 3, 1913 (38 Stat. 114). On October 10, 1914, the plaintiff's husband gave her 23,923 of common, and 1,925 of preferred, shares in the Electric Boat Company, of which he was then the majority owner. These she sold during the summer of 1915, and upon her income tax return for that year she was taxed in the sum of $258,762.28, assessed upon the difference between the value of the shares on October 10, 1914, and the amounts which she received upon their sale. She was forced to pay the tax, and after receiving $17,178.31 as a refund from the Commissioner, she sued to recover part of the balance, $191,080.05.

The cause was tried to a jury, and the court held that she was taxable, upon the theory adopted by the taxing officers, but that the jury must decide what was the value of the shares at the time of the gift. Evidence upon this issue was submitted by both sides, and the jury by special verdict found the value of the common shares to have been $24, and of the preferred $43.50. The court thereupon directed a verdict for the plaintiff in the amount found due her; the taxing officers having found the value of the shares at a lesser amount. The plaintiff, being unsatisfied, sued out the writ at bar.

The chief points raised are two: That under the Act of October 3, 1913, the appreciation in the value of property given to a taxpayer is not part of his taxable income; that there was no adequate evidence to support the findings of the jury as to the value of the shares. Certain rulings of the court during the course of the trial were also challenged and a claim is made for interest upon the amount refunded by the Commissioner.

Louis Marshall, of New York City, for plaintiff in error.

Emory R. Buckner, U. S. Atty., of New York City (Thomas J. Crawford and Edward Feldman, Asst. Attys. Gen., and Frederick W. Dewart, of Washington, D. C., of counsel), for defendant in error.

Before HOUGH, HAND, and MACK, Circuit Judges.

HAND, Circuit Judge (after stating the facts as above). [1] On the main point we have no question that the learned District Judge was right. The first paragraph of subdivision B of section 2 of the Act of October 3, 1913 (38 Stat. 167), provides that the income taxable "shall include gains, profits, and income derived from * * * sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in real or personal property, * * * or gains or profits and income derived from any source whatever, including the income from but not the value of property acquired by gift, bequest, devise, or descent." This is the only relevant enactment, and the question

is whether it includes "gains * * * derived from sales" of personal property acquired by gift. Section 2 (a) of the Act of September 8, 1916 (Comp. St. § 6336b), defines taxable income in the same language, but omits the words "including the income from but not the value of," etc., just quoted. These occur, however, in section 4 of that act (Comp. St. § 6336d), among the exemptions allowed as follows: "The value of property acquired by gift, bequest, devise or descent (but the income from such property shall be included as income)." We can see no conceivable difference between the meaning of the two statutes; the fact that in the first the exemption is coupled with the definition of the taxable income, while in the second it is placed among the exemptions, is of no consequence whatever.

That appreciation in the corpus of property received upon bequest is taxable under the act of 1916 was expressly held in Merchants' L. & T. Co. v. Smietanka, 255 U. S. 509, 41 S. Ct. 386, 65 L. Ed. 751, 15 A. L. R. 1305. True, in that case the person assessed was a testamentary trustee; but that can make no difference, for trustees are taxed like other individuals. Nor can it, of course, be a distinction that the case at bar involves a gift, and not a bequest. Gray v. Darlington, 15 Wall. 63, 21 L. Ed. 45, was definitely held to be inapplicable because of the difference in language of the statutes, and Lynch v. Turrish, 247 U. S. 221, 38 S. Ct. 537, 62 L. Ed. 1087, was distinguished because no gains had been made since the law was passed.

By section 2 (c) of the Act of 1918, it was provided that the gain derived from the sale of the property acquired before March 1, 1913, should be taken as its appreciation since that day, and the same provision was contained in section 202 of the Act of February 24, 1919 (Comp. St. § 6336⅛bb). Until 1921 nothing specific was said about computing the gain on gifts and bequests, but by section 202 (a) (2) of the Act of November 23 of that year (Comp. St. § 6336⅛bb), it was provided that, when gifts were made before January 1, 1921, their value should be taken as of the time of their acquisition, and thereafter at the time when the donor acquired the property. The argument is that then for the first time did Congress mean to tax the profit on gifts at all, since only then did it provide a means for computing it. If so, Congress did not mean to tax the appreciation of purchased property between 1913 and 1916, because only in 1916 was any rule laid down which professed to cover it, and then only in a form equally applicable to gifts and bequests. The argument proves too much.

The act of 1921 was apparently passed for quite another reason; that is, in the future to prevent donors from escaping the high taxes prevailing by giving property to their wives or children. As the latter would be allowed on any subsequent sales to subtract the value of the gift when they received it, and as a gift was not a sale as regards the donors, all increment escaped taxation which had accrued during the ownership of the donors. As to earlier gifts the rule remained as it had been in practice applied before the act of 1921 was passed. From this no inference can be made that, before the statute fixed the rule, gifts were not to be taxed at all, but rather that the computation of profits upon gifts had been left to the regulation of the department, as it had certainly been on purchases for the first three years. As difficulties in administration arose, Congress met them, following probably the suggestion of the department itself.

The exemption in all the statutes of the corpus of gifts and bequests shows that in the minds of those who drew the acts it was thought open to question whether even this might not be considered income. To suppose that in addition they meant to exempt profits upon them, while taxing profits on purchases would be a curious inversion of any fair incidence of the tax. Conceivably one might imagine the opposite a tenable notion; but the suggestion of the plaintiff appears to us to presuppose, not only a baseless, but an unjust, distinction. We have no doubt, quite independently of authority, that from the outset the profits on gifts and bequests was included with gains derived from the sale of all kinds of property, however acquired. So much for the plaintiff's liability.

[2] The jury found the value of the shares on October 10, 1914, in accordance with the law and the evidence, so far as we can see. The judge charged them to take the market price, if there was one established by free sales; if not, to find the "intrinsic value" of the property, at best a tenuous conception. He did not tell them that they must find that there had been such a market. So far as appears they may have based their verdict on "intrinsic value," except for the somewhat ingenuous insistence of the plaintiff that in so doing they should have accepted a corporate balance sheet with an item for "Patents, Good Will and Development," of over $7,000,000, which, standing alone, the judge quite naturally told them was insufficient evidence.

However, if there was no adequate basis for establishing a market value, the plaintiff's objection would be sound, for the charge allowed that finding, and there is every reason to suppose that the jury based their verdict

upon it. These shares in 1914 were not dealt in upon the New York Stock Exchange, so that the fact is irrelevant that it was closed from early in August until March of 1915. They were, however, dealt in on the New York Curb, at that time a loose, spontaneously grown, gathering of brokers, who met only in the street, though they made a very active and real market. The Curb was also closed early in August, but it opened on November 20, 1914, and thereafter all conditions of a free market existed, because the trading was unrestricted. Before that time people also did more or less private trading in shares of stock, among them 200 shares of this company. These we may omit, for after doing so there remain between November 19 and December 1 sales of 1,215 common shares and of 425 preferred. The average price of the first was less than $24 and of the second less than $42.

It is urged that these sales are too meager to justify a conclusion as to the value of the plaintiff's holdings, which in the common were nearly 20 times as large. Yet it must be remembered that the value of that number of shares in the hands of a single holder could not be greater than the sale price of smaller quantities, unless some one wished to gain control of the company. Such a possible higher value is wholly speculative, and any attempt to market so large a quantity would have probably sent down the value far below the prices which prevailed. The size of her holdings, so far as it counts at all, counts against her; all we need say is that she is not injured, if it be ignored. Walter v. Duffy, 287 F. 41 (C. C. A. 3), is not parallel. The market in that case had been very sluggish, and each sale was a matter of negotiation; in several years only 600 or 700 shares had been sold, of which nearly 500 were thrown upon the market by a bank in selling out a pledge. The price of the common shares between May and August had been about 13, and the jury would have been warranted in taking a figure between that and the opening price on November 20 of 24, as the taxing officers apparently did when they reassessed the tax. The existence of the Great War was steadily raising the prices of such securities, and after the first of the year this one commenced to go up rapidly, so that by summer it had reached enormous heights, due to the demand for submarines by the belligerents. On the whole evidence, not only do we think that the jury was justified in their verdict, but it seems to us that they took the highest figure which that evidence admitted.

[3] The judge admitted in evidence "bid and asked" quotations, from certain accepted financial journals. Some of the witnesses for the defense testified that these were records of actual events, and were treated by brokers as a reliable index of value. Whatever might be our own judgment as to the value of such quotations, we cannot see how the judge could have excluded them under this proof. If genuine, "asked" prices are those at which holders will sell, and therefore their opinion of the worth of their securities. In the end value is no more than the opinions of those who have, and those who have not, when they coincide. When they do not, "asked" prices are a measure of the most sanguine opinions about the security; sellers can demand no more. It is well settled that the records, qua records, were competent, Cliquot's Champagne, 3 Wall. 114, 140, 141, 18 L. Ed. 116; Virginia v. West Virginia, 238 U. S. 202, 212, 35 S. Ct. 795, 59 L. Ed. 1272.

[4] The burden of proof rested upon the plaintiff to establish that the defendant had extorted from her money to which he was not entitled. United States v. Anderson, 269 U. S. 422, 443, 46 S. Ct. 131, 70 L. Ed. 347; U. S. v. Mitchell, 271 U. S. 9, 12, 46 S. Ct. 418, 70 L. Ed. 799.

[5] None of the requests to charge added anything of substance to the judge's colloquial charge, except those which he should have denied outright. Such requests only serve to call generally to the judge's attention those questions which the party wishes to have brought before the jury. We need hardly repeat that they in no sense compel him to use the language chosen, and it is only when he has misconceived the law at large that they can be the basis for reversing the judgment.

[6, 7] The complaint did not ask for interest upon the sum which the Commissioner of Internal Revenue refunded before suit brought, nor was there a motion to amend the pleading during the trial. That would in our judgment be final in any case, but on the merits the claim is bad. The plaintiff gave a receipt for this amount in which she reserved "her right, if any, to recover any additional sum for which suit might thereafter be brought." After accepting the principal, she could not have sued for interest alone. Stewart v. Barnes, 153 U. S. 456, 462–464, 14 S. Ct. 849, 38 L. Ed. 781. Literally, therefore, interest does not fall within the terms of her reservation. We think it does not so fall substantially; it is a reasonable requirement that, if a taxpayer means to reserve such a right, he should so express himself definitely. Whether such a reservation would have been effective in any case we need not say; conceivably the taxpayer has only the alternatives of accepting his principal, without interest, or suing to recover both.

Judgment affirmed.