CRAWFORD v. HELVERING, Commissioner of Internal Revenue.
No. 6101.

Court of Appeals of the District of Columbia.
Argued March 12, 1934.
Decided April 2, 1934.

Sidney J. Hayles, of Atlanta, Ga., and Eliot C. Lovett and Rice Hooe, both of Washington, D. C., for petitioner.

Sewall Key, Francis H. Horan, J. Louis Monarch, E. Barrett Prettyman, Louise Foster, and Owen W. Swecker, all of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

PER CURIAM.

Petitioner formerly was a partner in the firm of Crawford & Slaten. He and two others held equal shares in the partnership. The partnership had a contract with the Viking Corporation under which it agreed to buy exclusively from that corporation. The contract would have terminated in the fall of 1929. In the summer of 1927 Viking began negotiations looking to the perpetuation of the contract relationship between the partnership and itself, and suggested to the partners that a corporation be formed for this purpose. The negotiations resulted in this plan being adopted. The assets of the partnership were appraised and transferred to the new company, and Viking contributed $100,000 to the capital. In order to bring up the new capitalization to $250,000, the goodwill of the partnership was appraised at $28,221.97, and $6,057.13 was added by the elimination of a reserve for bad debts on its books. The new company then issued 500 shares of stock to each of the three partners and 1,000 shares of stock to Viking. The Commissioner determined that the partnership had derived a taxable gain in the amount of $34,279.10. This, as the Board found, was computed as follows:

"In addition to the assets which were shown on the books of the partnership prior to incorporation, an item of goodwill was set up in the amount of $28,221.97. The effect of the respondent's determination is that this goodwill cost the partnership nothing, and hence the full amount of the par value of stock received therefor represents gain. In addition to the goodwill adjustment, the liabilities of the partnership were reduced by an adjustment which eliminated a reserve for bad debts in the amount of $6,057.13, thereby increasing the investment or capital account of petitioners in a like amount. In other words, in respect to the last item mentioned, the partners received stock at par value in excess of the book value of the assets to the extent of $6,057.13, which amount, therefore, respondent has determined, represents profit realized by the petitioners."

The Board held that it was impossible to determine from anything appearing in the record what the goodwill set up on the books cost the partnership, and so held that the presumption in favor of the correctness of the Commissioner's determination was not rebutted. The Board then said:

"In this situation, the issue resolves itself into the single question whether it is reasonably established by the record that said stock did not have a fair market value equal to par."

The Board decided the record would not justify that view, the basis of the holding being that, while there was no evidence that there had been any sales of the stock, the balance sheets of the partnership, as well as the balance sheets of the new corporation, disclosed that the stock had an intrinsic and book value equal at least to the par value of the authorized capital stock. The Board also points out that petitioner and the other directors of the corporation in a formal resolution adopted by the corporation had declared the assets which were exchanged for the stock to be reasonably worth $150,000. These facts, together with the fact that the Viking Corporation had purchased 1,000 shares of the stock at par, led the Board to decide that there was sufficient evidence to hold that the stock had a fair market value and that the Commissioner's determination, that fair market value was par, was sustainable.

It is generally said by most of the courts which have had to deal with the subject that there is no definite formula by which to determine fair market value as that term is used in the tax statutes. The question, as all agree, is necessarily one of fact to be determined by the evidence. In many cases it is said to be the price which a ready buyer not compelled to buy would pay and a ready seller not compelled to sell would take. But after all, the question of fact is to be determined from the circumstances. If property is exchanged for other property and the property received in exchange has a money value, various methods may be adopted to establish market value. Actual sales may

be shown, as may also intrinsic value; book value may be considered, as also earning capacity. These are all elements which tend to the ascertainment of fair market value, and, when considered together or singly, may establish the fact.

Petitioner properly points out that it is difficult to prove a negative, and we have not overlooked that fact, but the record here fails to show any fact or facts from which the conclusion that there was no market value can be drawn.

In these circumstances, we are obliged to agree with the Board that the burden on the petitioner to prove that the Commissioner's determination was erroneous was not met. Having failed to introduce any relevant facts in relation to the question, the decision of the Commissioner, approved as it was by the Board, should not be disturbed.

Another point raised by petitioner is that he received only 467 shares of stock in the corporation instead of 500 shares. The Commissioner and the Board found that he received 500. The stock book shows that 500 shares were issued to him, and while there is some evidence tending to show that later 33 shares of his stock were transferred to Viking and that the original purpose was that this should be done, the actual facts are not sufficiently clear to justify us in saying that the actual amount of shares of stock received by him in his own right in transfer of his share of the partnership was not 500.

Affirmed.