## COMMISSIONER OF INTERNAL REVENUE v. ROBERTSON.

### SAME v. CHAPMAN.

#### Nos. 6749, 6750.

Circuit Court of Appeals, Sixth Circuit.
Feb. 8, 1935.

Helen R. Carloss, of Washington, D. C. (Frank J. Wideman and Sewall Key, both of Washington, D. C., on the brief), for petitioner.

A. M. Van Duzer, of Cleveland, Ohio (Miller, Gorham, Wales & Adams, of Chicago, Ill., McKeehan, Merrick, Arter & Stewart and George William Cottrell, all of Cleveland, Ohio, and Robert W. Wales, of Chicago, Ill., on the brief), for respondents.

Before MOORMAN, HICKS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

These cases were consolidated and heard as one before the Board of Tax Appeals. They involve federal income taxes for the years 1927 and 1928, the Commissioner determining a deficiency against Robertson for each year, and against Chapman for 1928 only. The sole question before the Board of Tax Appeals was as to the fair market value of the common stock of The Firestone Tire & Rubber Company on March 1, 1913, within the meaning of section 204 (b) of the Revenue Act of 1926 (26 USCA § 935 (b) and 113 (b) of the Revenue Act of 1928 (26 USCA § 2113 (b).

The Commissioner found that the stock had a fair market value of $310.24 per share on March 1, 1913, while the Board of Tax Appeals decided that the stock had a fair market value on the basic date of $550 per share.

The cases raise the same legal question as that involved in Robertson v. Routzahn, Collector (C. C. A.) 75 F.(2d) 537, this day decided. The record presents much of the same evidence as in that case, but contains fuller evidence on the question of actual market sales and fair market value. It presents not only a list of actual sales reported to Fred S. Borton, a Cleveland broker, but also a list of twenty-seven sales of Firestone stock made by Claire App, an Akron broker, from January 4, 1913, through July 24, 1913, the high price being $360 and the low being $230. Eight shares were sold by App on March 5, 1913, for $300 each, and on March 10 he sold ten shares for $297 each. In addition, a list of bid and asked quotations relative to Firestone stock, published in the Akron Beacon-Journal by Claire App & Company, brokers, from February 1, 1913, to May 17, 1913, was admitted without objection. It comprises 107 separate quotations, most of them giving both bid and asked price. The bids varied in amount from $360 on February 3 to $220 on June 12. The asked price varied from $362 to $231. On March 1, $293 was bid and $298 asked. This sheet, taken together with the list of actual sales made by App, corroborates the finding of the Commissioner. During February, March, April and May, approximately 800 shares of Firestone common stock were transferred. About twenty per cent. of this was transferred to "insiders." This evidence shows that upon the basic date there was an actual market of willing sellers and willing buyers.

The record also contains respondent Robertson's sworn income tax returns for the years 1923 and 1924, in which he stated that the value of this stock on March 1, 1913, was $293 a share. Robertson, from 1909 to 1922, was treasurer of the Firestone Company. In his testimony he said the stock on the basic date was worth in excess of $750 a share.

John Grimes, valuation expert, made a fuller statement than in the tax refund case. He gave it as his opinion, based upon Firestone earnings for one year prior to March 1, 1913, capitalized at thirteen and one-half per cent., that the fair market value of the stock on the basic date was $300.

S. G. Carkhuff, secretary of the company, said he would not have sold his common stock upon the basic date for less than $700 or $800 a share.

Fred S. Borton stated that the sales reported to him did not represent fair market value, but also declared that he could not say that one of these sales was forced, and that he would not advise a purchaser to pay more than the current market price.

J. L. Swinehart, an accountant, gave opinion testimony based upon various hypothetical estimates and upon varying degrees of capitalization, that the fair market value of the stock on the basic date was not less than $600 a share.

The record shows that the Board, in making its valuation, accepted this speculative evidence as the basis of its finding. In our opinion it lacks substantiality in view of the undisputed evidence as to the prices at which the stock was sold, the number of transfers, and the sworn income tax returns of Robertson. Since it was not substantial, it was an error of law for the Board to accept it as a basis for fixing the value as of March 1, 1913.

The adjudications upon which respondents principally rely, Phillips v. United States (D. C.) 12 F.(2d) 598, affirmed upon this point, and reversed upon another question in (C. C. A.) 24 F.(2d) 195, and Heiner, Collector v. Crosby (C. C. A.) 24 F.(2d) 191, were cases of valuation in which the Commissioner considered sales upon certain isolated dates as fixing the fair market value.

On the other hand, in Commissioner v. Swenson, 56 F.(2d) 544 (C. C. A. 5), the Board of Tax Appeals was reversed upon the ground that it should have considered the private sale of stock at par for cash to acquaintances and old stockholders, and erred in holding that the stock had no market value.

In Rice v. Eisner, Collector, 16 F.(2d) 358 (C. C. A. 2), the court held that the sale of 1215 shares of common stock of the company and 425 shares of its preferred stock on the New York Curb Exchange when it was loosely organized was not too meager to require submission to a jury of the question of value.

In Penney & Long, Inc., v. Commissioner, 39 F.(2d) 849 (C. C. A. 4), the court reversed the action of the Board of Tax Appeals, basing its reversal upon the ground that the taxpayer sustained the burden before the Board of overturning the finding of the Commissioner by showing that stock was sold in a comparatively large quantity at par, even though it was sold largely to friends and relatives of the incorporators of the petitioner company.

These decisions in principle support the present holding.

At the hearing before the Board of Tax Appeals the burden was on the taxpayer to prove that the value placed on this stock by the Commissioner was incorrect. Botany Worsted Mills v. United States, 278 U. S. 282, 49 S. Ct. 129, 73 L. Ed. 379; Wickwire v. Reinecke, 275 U. S. 101, 48 S. Ct. 43, 72 L. Ed. 184; United States v. Anderson, 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347; United States v. Mitchell, 271 U. S. 9, 46 S. Ct. 418, 70 L. Ed. 799; Austin Co. v. Commissioner, 35 F.(2d) 910 (C. C. A. 6); Louisville Cooperage Co. v. Commissioner, 47 F.(2d) 599 (C. C. A. 6); Avery v. Commissioner, 22 F.(2d) 6, 55 A. L. R. 1277 (C. C. A. 5); Brown v. Commissioner, 22 F.(2d) 797 (C. C. A. 5); Bishoff v. Commissioner, 27 F.(2d) 91 (C. C. A. 3). Here the respondents did not sustain the burden.

The orders and decisions of the Board of Tax Appeals are reversed, and the causes are remanded for further proceedings.