## INTERCOAST TRADING CO. et al. v. McLAUGHLIN.

### No. 19461—R.

District Court, N. D. California, S. D.

Dec. 23, 1936.

Claude I. Parker, John B. Milliken, and Bayley Kohlmeier, all of Los Angeles, Cal., for plaintiffs.

H. H. McPike, U. S. Atty., and Esther B. Phillips, Asst. U. S. Atty., both of San Francisco, Cal., for defendant.

ROCHE, District Judge.

Plaintiffs sue for a partial refund of a total stamp tax of $27,308.35 paid by the Intercoast Trading Company, a corporation now dissolved, on an original issue of its capital stock. Stock certificates representing the entire issue of 1,800,000 shares without par value were issued from September 10, 1929, to October 22, 1929.

Under Schedule A, subdivision 2, of the Revenue Act of 1926 (section 800 et

[8] See 66 App.D.C. 141, 85 F.(2d) 398.

seq. [44 Stat. 99, 101]), as re-enacted by the Revenue Act of 1928 (45 Stat. 791), a stamp tax of one cent was due on every $20 of "actual value" of each stock certificate at the time of its issuance. The plaintiff contends that the value of the stock was approximately $17.50 a share; the defendant maintains it was about $30 a share as assessed by the Commissioner of Internal Revenue. The question presented is whether that value was greater or less than $20. If the former, it is stipulated the tax of $27,308.35 paid was correct; if the latter, the tax should have been only $16,097.98; the difference is $11,210.37.

■ The burden is on the plaintiff to show that the tax, as assessed by the collector, was erroneous. United States v. Anderson, 269 U.S. 422, 433, 46 S.Ct. 131, 132, 70 L.Ed. 347; United States v. Mitchell, 271 U.S. 9, 12, 46 S.Ct. 418, 419, 70 L.Ed. 799. Presumably that official's computation was correct. Wickwire v. Reinecke, 275 U.S. 101, 48 S.Ct. 43, 72 L.Ed. 184. In this case, that burden placed on the taxpayer has been sustained as a review of the uncontroverted facts will disclose.

Regulations 71, relating to stamp taxes as promulgated by the Bureau of Internal Revenue, provides in article 27(d) that "in the case of stock without par * * * the actual value is to be determined by the market price of each share." Pursuant to this regulation, the Commissioner assessed the tax herein on a value of $30 a share because of the fact that 97,506 shares were sold on October 15, 1929, to the Corporation Holding Company for $29.50 a share (a private sale); that 4,600 shares were sold on the San Francisco Curb Exchange during the week ending August 30, 1929, at from 29⅝ to 30½; and that the succeeding week 5,200 shares were sold on the same exchange at from 29¾ to 30⅜.

In addition to these sales relied upon by the Commissioner, from August 26, 1929, to September 7, 1929, 1,102,494 shares were purchased by stockholders of Transamerica Corporation (an interlocking corporation) at $17.50, this privilege being extended to them by stock subscription warrants sent only to such stockholders. Prior to September 7, 1929, Transamerica Corporation itself purchased 600,000 shares at the same price, which, together with the sale to the Corporation Holding Company, disposed of the entire issue.

■ It must be kept in mind that in this case we are not endeavoring to find the "market price" of the stock or the "fair market price" as is sometimes the case for purposes of income taxation, but the "actual value." The terms are different, and this difference has been recognized by the cases. Thus in Commonwealth v. Edgerton Coal Co., 164 Pa. 284, 30 A. 125, 129, it is said: "The stock may have several values,—a market value, determined by the selling price of its shares in open market, a speculative value, based on calculation of future prospects and contingencies; or an actual value, ascertainable from the intrinsic worth of its assets immediately available or unavailable; on its profits or losses, covering a fixed period, and on business calculations for the future. And other elements of value besides these, in the mind of the business man, may be taken into account in arriving at a correct conclusion as to the actual value of the whole capital stock."

And the Ninth Circuit Court of Appeals stated in Buck v. Commissioner, 83 F.(2d) 786, at page 788: "Stock may have a 'par' value, a 'book' value, and an 'actual' value. All of them may differ from the 'fair market' value, and among themselves. * * * This testimony * * * could easily lead to the inference that the witness was giving his opinion as to the 'actual' value, rather than the 'fair market value.'"

■ What "value" is, whether it be "actual value" or "market value," is of course a question of fact. Several things contribute to its ultimate calculation. Each one must be given its proper consideration and weight. Not any one element can be invariably pointed to as a true criterion of the intrinsic worth of a stock. Crawford v. Helvering, 63 App.D.C. 140, 70 F.(2d) 744; Rogers v. Strong (C.C.A.) 72 F.(2d) 455. Some of the factors to be considered are, market quotations, Rice v. Eisner (C.C.A.) 16 F.(2d) 358; actual sales, Crawford v. Helvering, supra; but the selling price is not to overshadow the value of assets, Phillips v. U. S. (D.C.) 12 F.(2d) 598, at page 601; assets, Commonwealth v. Edgerton Coal Co., supra; book value, Commonwealth v. Edgerton Coal Co., supra; earning capacity, Crowell v. Commissioner (C.C.A.) 62 F.(2d) 51; Commonwealth v. Edgerton Coal Co.,

supra; testimony of experts, In re Clabby's Estate, 308 Pa. 287, 162 A. 207, 208, 83 A.L.R. 936; inflation In re Clabby's Estate, supra; Rogers v. Strong, supra; and other pertinent elements of each particular case.

The Commissioner's valuation was solely on the price at which 9,800 shares were sold on the San Francisco Curb Exchange (⁵⁴/₁₀₀ of one per cent. of the total issue) and 97,506 shares were sold to the Corporation Holding Company. Compare Phillips v. U. S., supra, 12 F.(2d) 598, at page 601. In determining the consideration to give to these sales, it must be remembered that they represented a turnover in only 5.96 per cent. of the stock and occurred at the very peak of the boom years.

In Rogers v. Strong, supra, the Third Circuit Court of Appeals recognized that, in determining the "fair real value" of stock, market quotations at the height of inflation were not conclusive and affirmed the admission of other evidence. See, also, In re Clabby's Estate, supra.

In fact, the courts go so far as to hold that market quotations are not even conclusive of "fair market value," let alone "actual value," and that, in the case of the former, various other factors and circumstances are properly considered in determining value. See Phillips v. U. S., supra; Walter v. Duffy (C.C.A.) 287 F. 41; Heiner v. Crosby (C.C.A.) 24 F.(2d) 191. Of course, this rule is even more strongly applicable where the question presented deals with actual value. See Norfolk, etc., Ry. Co. v. Board of Public Works (D.C.) 3 F.Supp. 791 (three judges); In re Clabby's Estate, supra.

In the Norfolk Ry. Case the taxpayer contended that stock and bond prices should govern as to the "actual" value of a railroad for purposes of tax assessment, but the error of this proposition was amply demonstrated by the court. However, market prices are entitled to consideration. Rice v. Eisner, supra.

■ All of the factors in the instant case, including the testimony of the expert who was called, established the value of the stock at substantially less than $20—approximately $17.50. The Intercoast Trading Company was organized at the very peak of the stock market boom. It was an offshoot of the Bank of America, and its sole purpose was to deal in stocks and bonds for speculative transactions—to buy and sell in large quantities with rapid turn-overs in the hope of thereby making profits. It was in no sense interested in holding securities for investment purposes. The company was authorized by the California corporation commissioner to sell its stock for $17.50 per share. Outside of the money in its treasury from the sale of its stock, it had absolutely no other assets. It was a newly formed corporation and had no going concern value or good will. The active management was in the hands of a Mr. Migliavacca, previously a manager of one of Bank of America's branch banks at Napa and formerly a stockbroker. The company had no record of past profits or earnings, and no hope of future ones other than those that it could secure through sagacious buying and selling like any other market speculator. In such purposes it had no methods or means that were peculiar solely to it and unknown to others in the same field. Certainly, at the time the tax was paid, the company had not proved its ability. Its book value and the value of its assets amounted to substantially less than $20 a share. Testimony of an expert placed the actual value at about $17.50.

Assigning the proper weight to each factor involved in the present case, taking into consideration the period at which open market sales occurred and their small volume, the court is of the opinion that the actual value of the shares of stock in question was considerably less than $20 each.

■ What has been said demonstrates that the regulations' "measuring rod" of market price was error when applied to this case, because it took into consideration only one of numerous pertinent criteria. By so doing it contravened the express mandate of the statute. Convenience of administration cannot justify such a result. Such regulations have the effect of law only in so far as they do not conflict with the primary statutory enactment. Waite v. Macy, 246 U.S. 606, 38 S.Ct. 395, 62 L.Ed. 892; Morrill v. Jones, 106 U.S. 466, 1 S.Ct. 423, 27 L.Ed. 267. "Actual" and "market" values are two distinct things, each with a well-defined meaning. Words used in a statute are given their ordinary meaning. Avery v. Commissioner, 292 U.S. 210, 54 S.Ct. 674, 78 L.Ed. 1216; Magnano Co. v. Hamilton, 292 U.S. 40, 46, 54 S.Ct. 599, 602, 78 L. Ed. 1109; Old Colony R. Co. v. Commissioner, 284 U.S. 552, 560, 52 S.Ct. 211, 213,

76 L.Ed. 484. Hence the construction of the statute as found in the regulations, to the extent that market value and actual value do not coincide, is erroneous. In such a case, legislative re-enactment of the statute without change does not place Congress' approval upon the administrative interpretation. United States v. Missouri Pac. R. Co., 278 U.S. 269, 280, 49 S.Ct. 133, 137, 73 L.Ed. 322.

In holding for the plaintiff, the court does not mean to intimate that section 27 (d) of regulation 71 would be void in all cases. In many instances where corporate organization is very involved and assets and liabilities are difficult of accurate measurement, it might be a valid test. In this respect the instant case is extremely distinctive because of the clarity with which the entire corporate structure, assets, and liabilities may be perceived, and the actual value determined.

Motion by plaintiffs for judgment will be granted, and that by the defendant denied. Findings of fact may be prepared in accordance with this opinion. The amount of the difference between the tax as paid and the tax as due (as shown in the stipulation) will be awarded to plaintiffs, together with interest thereon as prayed for.