**Abraham L. FISTEL, a stockholder of Follansbee Steel Corporation, suing on behalf of himself and all other stockholders similarly situated and on behalf of and in the right of Follansbee Steel Corporation, Plaintiffs,**

v.

**C. E. CHRISTMAN and Follansbee Steel Corporation, Defendants.**

United States District Court
S. D. New York.
Oct. 19, 1955.

See also 133 F.Supp. 300; 13 F.R.
D. 245.

---

Morris J. Levy, New York City, for plaintiffs.

Joseph Lotterman, and Ralph R. Weiser, New York City, for C. E. Christman.

Kelley, Drye, Newhall & Maginnes, New York City, for Follansbee Steel Corp., Francis S. Bensel, and W. Frederick Knecht, New York City, of counsel.

WEINFELD, District Judge.

Plaintiff brings this action as a stockholder of the defendant Follansbee Steel Corporation pursuant to § 16(b) of the Securities Exchange Act of 1934, 15 U. S.C.A. § 78p(b), to recover profits allegedly realized by the defendant Christman, a director of Follansbee, on the purchase and sale of its securities within a six month period.

On June 4, 1948 Christman sold to Follansbee 4,217 shares of Federal Enamel & Stamping Company stock and received in exchange a total of 21,088 shares of Follansbee plus approximately $15,000 cash. In effect, for each share of Federal he received five shares of Follansbee plus $3.75 cash. It is conceded in the subsequent six month period he sold 5,-200 shares of the Follansbee stock. The single fact issue the Court is called upon to determine is the fair market value of the Federal stock on June 4, 1948 which Christman gave in exchange for the Follansbee stock. This would determine Christman's purchase price of the Follansbee stock acquired by him.[1]

The Federal stock, of which approximately 40,000 shares were outstanding in February, 1948, was closely-held with more than 90% owned or controlled by the defendant Christman who had been the founder of the business. Up to February, 1948 when Christman sold 70% of the stock of the corporation to the defendant Follansbee there had been very few sales. The bid and offer quotation on the over-the-counter market, as shown by the records of the National Quotation Bureau, did not reflect actual transactions but at best were in the nature of "feelers", and even these were extremely few in number. Under the circumstances, the quotations published by the National Quotation Bureau, while permitted to remain in the record, are of limited probative value.[2] The fact is there was no active trading market in the stock and such sales as took place were on a negotiated basis. Accordingly, both sides relied in the main upon expert witnesses.

The plaintiff, to support his case, relies principally upon the testimony of a certified public accountant who claims some experience in the valuation of securities. However, I am of the view that the rigidity of his valuation, even in the face of his admission that certain important factors bearing on value, were either unknown to him or were not taken into ac-

---

1. Park & Tilford, Inc., v. Schulte, 2 Cir., 160 F.2d 984, 988.

2. Cf. Charles Hughes & Co., Inc., v. Securities and Exchange Commission, 2 Cir., 139 F.2d 434; New York Civil Practice Act, 375–a; Horgan v. Frenkel, Kovac & Co., Inc., 161 Misc. 493, 293 N.Y.S. 264; Factors Affecting the Stock Market, Report of Sen. Comm. on Banking and Currency, Sen.Rep. No. 1280, 84th Cong., 1st Sess. at 157 et seq.; Loss, Securities Regulation, 1955 Supp. at 713.

count, seriously impairs the worth of his testimony. His fixed adherence to a value of $125 per share for the Federal stock in the light of the series of actual sales beginning in 1948 and through and subsequent to the June, 1948 transaction, suggests an accommodation to the requirements of the plaintiff's case. This is an instance of the theorist refusing to admit any margin of error despite demonstrated experience to the contrary.

On the other hand, the testimony of the expert called by the defendant impressed me as reflecting the considered judgment of a man experienced in the valuation of securities. His opinion that the Federal shares were of the fair value of $150 each was persuasive and convincing.

And apart from his testimony the Court would not be justified in disregarding the sales price for the Federal stock in the February, 1948 transaction when Christman sold 51% of the outstanding stock, 20,556 shares, for $170 cash per share, and another 19% receiving for each share of Federal five of the Follansbee stock. Considering both the cash and the Follansbee stock that was turned over, the price per share of Federal averaged $153.

Neither would the Court be justified in disregarding the subsequent June transaction when five shares of Follansbee which were turned over to Christman for one share of his Federal stock were then selling on the New York Stock Exchange at approximately $150—my recollection is that the price per share of the Follansbee stock was close to $30 a share. Parenthetically it should be noted in this connection that plaintiff's expert relied in part on the Follansbee market value in February, 1948 as some indication of the worth of the Federal stock at that time; logically, if there be any merit to the view, the same yardstick should be applied to the June transaction —yet he failed to do so.

There is the further circumstance that Follansbee, pursuant to its agreement with Christman covering the June, 1948 transaction, offered to buy the shares of the remaining stockholders of Federal, the so-called outside stockholders, at $3.-75 in excess of the mean price of the Follansbee stock on June 2, 1948, or the mean price on the date of tender, whichever is higher. In practical terms, this meant a floor was fixed on the Federal stock for such purchases of $149.37. The fact is that many of the purchases from the outside stockholders were closed in the month of June during which the offer was held open at prices ranging from $153 to as high as $168 per share.

The evidence of the various sales is sufficiently persuasive to overcome the hypothetical valuation by plaintiff's expert based as it is upon theoretical concepts. All the sales from February, 1948 to the end of June, 1948 were consummated on an arms length basis. They were made between ready buyers and ready sellers, neither of whom acted under compulsion. Under the circumstances of this case, such sales may be deemed an accurate, if not the best, reflection of the fair market value of the stock.[3]

In the Court's judgment the value of the Federal stock on June 4, 1948 was not less than $140 per share. Incidentally, this takes into account such premium, if any, which might have been paid to secure a large and controlling block of stock of a closely-held corporation. A value of $140 per share for the Federal stock establishes, on the five to one basis, $28 per share as the cost price to Christman of each share of Follansbee stock. Since the sale of 5,200 shares of Follansbee stock in the six months period was made at $27 per share, no profit was realized within the contemplation of § 16(b) of the Securities Exchange Act of 1934.

3. Cf. Borg v. International Silver Co., 2 Cir., 11 F.2d 147, 152; Rice v. Eisner, 2 Cir., 16 F.2d 358; Bull v. Smith, 2 Cir., 119 F.2d 490, 492; Crawford v. Helvering, 63 App.D.C. 140, 70 F.2d 744; Commissioner of Internal Revenue v. Robertson, 6 Cir., 75 F.2d 540.

The plaintiff's complaint is dismissed upon the merits. The foregoing shall constitute the Court's findings of fact and conclusions of law. However, either party may upon notice to the other propose further findings of fact and conclusions of law.

Judgment may enter accordingly.