**FRANKLIN NATIONAL BANK,**
Plaintiff,

v.

**L. B. MEADOWS & CO., Inc., Alessandrini & Co., Inc., Wellington Hunter Associates and Philip S. Budin & Co., Inc., Defendants,**

**L. B. MEADOWS & CO., Inc., Third-Party Plaintiff,**

v.

**ALESSANDRINI & CO., Inc., Cross-Defendant,**
and
**Morton Kantrowitz and Ray I. Weiss, Third-Party Defendants.**

No. 69–C–160.

United States District Court,
E. D. New York.

June 25, 1970.

Bergerman & Hourwich, New York City, for Philip S. Budin; Joseph Calderon, New York City, of counsel.

Kaplan, Kilsheimer & Foley, New York City, for L. B. Meadows & Co. Inc.; Dermot G. Foley, New York City, of counsel.

Robert W. Taylor, New York City, for defendants, cross-defendant and third-party defendant.

Seymour P. Schulman, New York City, for Morton Kantrowitz.

Sahn, Shapiro & Epstein, New York City, for plaintiff; Morris Shapiro, Alan R. Katz, New York City, of counsel.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

Plaintiff, the Franklin National Bank, seeks damages arising from defendants' alleged violation of § 15(c) (2) of the Securities Act of 1934. 15 U.S.C. § 78o (c) (2). The four defendants, each a broker-dealer involved in over-the-counter transactions, allegedly participated in the creation of a false market for the stock of American Continental Industries, Inc. by submitting fictitious quotations to the National Quotation Bureau for listing in its "pink sheets". Answering by denials, defendants also maintain that a violation of section 15(c) does not create a private right of action for damages.

All the defendants have moved for summary judgment against the plaintiff in motions joined by one of the third party defendants. Since there is a claim for relief based on a breach of the 1934 Securities Act and there are material issues of fact, these motions must be denied.

### I.

On February 15, 1968 Robert L. Taylor was introduced to one of plaintiff's loan officers by another customer of the bank and proceeded to negotiate a loan of $30,-000 which was to be secured by 10,000 shares of American Continental Industries, Inc. stock. Before approving the

loan, the bank officer contacted a broker with whom the Bank dealt and inquired as to the "pink sheet" quotations concerning this stock. He was advised that several firms were listing it and that the quotations were either Bid 10, Asked 12, or Bid 9, Asked 11. On the basis of this information the loan officer approved the loan and Mr. Taylor left the Bank that same day with $30,000.

The stock was, in fact, worthless. The borrower defaulted. The Bank seeks the $30,000 from the broker-dealers who listed the "pink sheet" quotations.

"Pink sheets" are published daily by National Quotation Bureau, Inc.; they are formally known as the National Daily Quotation Service. Subscribers include broker-dealers as well as various banks. The former, known as listing subscribers, place bid (will buy at) and ask (will sell at) quotations in the "pink sheets" for various over-the-counter securities. These are offers and do not reflect completed transactions. When doing this for one stock over a period of time, the broker-dealer is said to be "making a market" in that security. *See* L. Loll and J. Buckley, The Over-The-Counter Securities Markets 146 (2d ed. 1967). Each quotation in the "pink sheets" obligates the broker-dealer to a one-hundred share transaction at the stated price. Any larger sale is a matter for negotiation. *See generally* L. Loss, Securities Regulation 3318–27 (2d ed. 1961); Burns, Over-The-Counter Market Quotations: Pink, Yellow, Green and White Sheets—A Gray Area in the Law of Evidence, 52 Cornell L.Q. 262 (1967).

## II.

■ On oral argument plaintiff abandoned the common law fraud theory in the pleadings and placed full reliance on an implied private right of action under 15 U.S.C. § 78o(c)(2). That section prohibits brokers from inducing purchases of securities by the use of fictitious quotations. In relevant part it provides:

"No broker or dealer shall make use of the mails or of any means or instrumentality of interstate commerce to effect any transaction in, or to induce or attempt to induce the purchase or sale of any security * * * otherwise than on a national securities exchange, in connection with which such broker or dealer * * * makes any fictitious quotation. * * * *"

Regulations developed under this section define a "fictitious quotation" as one made pursuant to an arrangement between brokers, "including a joint account, guarantee against loss, commission, markup, markdown, indication of interest and accommodation arrangement," without revealing the fact of and the participants in the arrangement to the "inter-dealer-quotation system"; to avoid violation of the regulations the quotation service must "make it a practice" to note this information along with the quotation. 17 C.F.R. 240.15c2–7. The defendants' first contention, that these provisions do not create a private right of action, is rejected.

Only few sections of the various Securities Acts provide explicitly for private actions. *See, e. g.,* 15 U.S.C. §§ 77k, 77l, 77o (1933 Act); 15 U.S.C. §§ 78i(e), 78p(b), 78r, 78t (1934 Act); 15 U.S.C. § 77www (1939 Trust Indenture Act); cf. 15 U.S.C. §§ 78cc (1934 Act); 15 U.S.C. §§ 80a–46, 80b–15 (1940 Investment Company Act) (makes contracts in violation of various provisions voidable). Nevertheless, courts have implied the existence of private remedies for violation of other provisions. J. I. Case Company v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) (15 U. S.C. § 78n(a)); Jordan Building Corp. v. Doyle, O'Connor & Co., 401 F.2d 47 (7th Cir. 1968) (15 U.S.C. § 78j(b) and rule 10b–5); Mutual Shares Corp. v. Genesco, Inc., 385 F.2d 540, 543 (2d Cir. 1967) (same); Fischman v. Raytheon Mfg. Co., 188 F.2d 783, 787 (2d Cir. 1951) (same); Kardon v. National Gypsum Co., 69 F.Supp. 512, 513 (E.D.Pa.1946) (same); Taussig v. Wellington Fund, Inc., 313 F.2d 472, 475–476 (3d Cir. 1963), cert. denied, 374 U.S. 806, 83 S. Ct. 1693, 10 L.Ed.2d 1031 (1963) (15

U.S.C. § 80a–34(d)); Baird v. Franklin, 141 F.2d 238, 244–245 (2d Cir.), cert. denied, 323 U.S. 737, 65 S.Ct. 38, 89 L. Ed. 591 (1944) (15 U.S.C. § 78f(b)), cited with approval in Goldstein v. Groesbeck, 142 F.2d 422, 427 (2d Cir.), cert. denied, 323 U.S. 737, 65 S.Ct. 36, 89 L. Ed. 590 (1944); Goodman v. H. Hentz & Co., 265 F.Supp. 440, 445 (N.D.Ill. 1967) (15 U.S.C. § 78o(b) (5) (E)); Brown v. Bullock, 194 F.Supp. 207, 223–230 (S.D.N.Y.1961), aff'd, 294 F.2d 415 (2d Cir. 1961) (15 U.S.C. § 80a–36); Osborne v. Mallory, 86 F.Supp. 869, 879 (S.D.N.Y.1949) (15 U.S.C. § 77g); Remar v. Clayton Securities Corp., 81 F. Supp. 1014, 1017 (D.Mass.) (15 U.S.C. § 78g). See also Maher v. J. R. Williston & Beane, Inc., 280 F.Supp. 133, 137 (S.D.N.Y.1967) (15 U.S.C. § 78o(c) (1) based action barred by statute of limitations, but court assumes existence of cause of action); Opper v. Hancock Securities Corp., 250 F.Supp. 668, 673–674 (S.D.N.Y.), aff'd 367 F.2d 157 (2d Cir. 1966) (assuming validity of cause of action based on 15 U.S.C. § 78o(c) (1)); Geismar v. Bond & Goodwin, Inc., 40 F. Supp. 876 (S.D.N.Y.1941) (implying a money damages remedy under 15 U.S.C. § 78cc(b), which makes contracts violative of 15 U.S.C. § 78o(c) (1) voidable). Once a private remedy is implied, jurisdiction is based upon § 27 of the 1934 Securities Act. 15 U.S.C. § 78aa.

The existence of these private remedies and the implication of one under 15 U.S.C. § 78o(c) (2) is supported by the statutory tort theory which implies "a private right of action for violation of a statutory duty or a liability." Greater Iowa Corporation v. McLendon, 378 F. 2d 783, 789–791 (8th Cir. 1967). See Fischman v. Raytheon Mfg. Co., 188 F. 2d 783, 787 (2d Cir. 1951); Kardon v. National Gypsum Co., 69 F.Supp. 512, 513 (E.D.Pa.1946) ("disregard of the command of a statute is a wrongful act and a tort."). Both the Restatement and the Restatement, Second of Torts (§ 286) (Tent.Draft.No.4, 1959) recognize this principle and support relief for a plaintiff within the class the statute is intended to protect. While it is true that these provisions relate primarily to negligence theory (see Note, Private Rights from Federal Statutes: Toward A Rational Use of Borak, 63 N.W.L.Rev. 454, 456–7, nn. 20, 23 (1968)), they have been used to support imposition of civil liability under various federal statutes in a nonnegligence context. See, e. g., Fitzgerald v. Pan American World Airways, 229 F.2d 499, 501 (2d Cir. 1956) (49 U.S.C. § 484(b), discrimination by airlines); Reitmeister v. Reitmeister, 162 F.2d 691, 694 (2d Cir. 1947) (47 U.S.C. § 605, "publishing" a telephone message); see generally L. Loss, Securities Regulation 934–42 (2d ed. 1961) ("The statutory tort doctrine, more or less as expounded in the Restatement, is now an accepted part of American law." Id. at 942).

The most compelling reason for implying a private remedy for violation of a particular section of the securities laws is to make the prohibitions of that section more effective. J. I. Case Company v. Borak, 377 U.S. 426, 432, 84 S. Ct. 1555, 1560 (1964) ("Private enforcement of the proxy rules provides a necessary supplement to commission action. * * * [I]t is the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose."); cf. Note, Prospects For Rule X–10B–5: An Emerging Remedy for Defrauded Creditors, 59 Yale L.J. 1120, 1134 (1950) (addition of statute of limitations in 1938 for 15 U.S.C. § 78cc(b) indicates Congress presumed existence of private right of action). If the defrauded victim is left without any remedies in these cases "the avowed purpose of 'reasonably complete and effective' protection would indeed be a snare and a delusion." Baird v. Franklin, 141 F.2d 238, 245 (2d Cir. 1944). Some cases have even indicated that absent a specific congressional limitation such civil remedies must be implied. See Rogers v. Crown Stove Works, 236 F.Supp. 572, 573 (N.D.Ill.1964); Brown v. Bullock, 194 F.Supp. 207, 224 (S.D.N.Y.), aff'd,

294 F.2d 415 (2d Cir. 1961). *See generally* Note, Implying Civil Remedies From Federal Regulatory Statutes, 77 Harv.L.Rev. 285 (1963); Note, Private Remedies for Water Pollution, 70 Colum. L.Rev. 734, 750 (1970).

The provisions in question are part of the general regulatory scheme aimed at controlling the over-the-counter markets. *See* 15 U.S.C. §§ 78o, 78o–1, 78o–2, 78o–3. Regulation in this area is necessary, but difficult. Large numbers of broker-dealers are involved, sometimes as principals and sometimes as agents. L. Loss, Securities Regulation 3338 (2d ed. 1961) (4,175 broker-dealers as compared to 1,366 members of the New York Stock Exchange). This dual role compounds risk of deception. *See, e. g.,* Chasins v. Smith, Barney & Co., 306 F.Supp. 177 (S.D.N.Y. 1969); Opper v. Hancock Securities Corp., 250 F.Supp. 668 (S.D.N.Y.), aff'd, 367 F.2d 157 (2d Cir. 1966).

Broker-dealers also trade in great numbers and varieties of securities. L. Loll and J. Buckley, The Over-The-Counter Securities Markets 142–143 (2d ed. 1967). Some commentators have claimed that "pink sheets" too often include "illusory, misleading, and fictitious quotations." Burns, Over-The-Counter Market Quotations: Pink, Yellow, Green and White Sheets—A Gray Area in the Law of Evidence, 52 Cornell L.Q. 262, 268 (1967).

Partly in recognition of the fact that the Securities Exchange Commission was not equipped to completely control this situation, Congress in 1938 authorized more stringent regulations through the National Association of Securities Dealers. 15 U.S.C. § 78o–3. This approach apparently has had only mixed success. L. Loss, Securities Regulations 1389–91 (2d ed. 1961).

■ In sum, given the need and applicable legal principles, it can hardly be doubted that there is a private right of action under 15 U.S.C. § 78o(c) (2). As part of the protected class, the Bank is a proper plaintiff. One of the specific purposes of the Securities Act of 1934 was to curb security price manipulation which would "prevent the fair valuation of collateral for bank loans. \* \* \*" 15 U.S.C. § 78b(3). Section 78o(c) (2) also speaks in terms of effecting "any transaction in, *or* \* \* \* sale of any security. \* \* \*"—language which includes acceptance of stock as collateral. (Emphasis supplied.)

### III.

■ The defendants contend that there is no genuine issue of fact as to the two essential elements of plaintiff's case and that they are entitled to judgment as a matter of law. First, they maintain that, on the basis of the depositions of the defendants submitted with this motion, there is no evidence to support a finding that they violated 15 U.S.C. § 78o(c) (2). Next, the defendants argue, the Bank could not, as a matter of law, have relied on the "pink" sheets.

These contentions must be rejected. While the plaintiff may not have a strong case and the defendants may, after all the evidence is presented, prevail at trial, sufficient serious factual issues remain to require denial of this motion. *See* Poller v. Columbia Broadcasting System, 368 U.S. 464, 472–473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); American Manufacturers Mutual Ins. Co. v. American Broadcasting-Paramount Theatres, Inc., 388 F.2d 272, 279, n. 9 (2d Cir. 1967).

■ The moving party, here the defendants, has the initial burden of showing that there is no genuine issue of fact, even if on trial the burden of proof would lay with his opponent. Underwater Storage, Inc. v. United States Rubber Co., 125 U.S.App.D.C. 297, 371 F.2d 950, 953 (D.C.Cir. 1966), cert. denied, 386 U.S. 911, 87 S.Ct. 859, 17 L.Ed.2d 784 (1967); Dyer v. MacDougall, 201 F.2d 265, 268 (2d Cir. 1952); Dean Construction Co. v. Simonetta Concrete Construction Corp., 37 F.R.D. 242, 244–245 (S.D. N.Y.1965); *see generally* 6 Moore's Federal Practice ¶ 56.15[3] at 2335–2343. In determining whether the movant

has sustained this burden "the inferences to be drawn from the underlying facts * * * must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). The presence of competing reasonable inferences from undisputed facts presents a genuine issue of material fact whose resolution should be left to the trier of the facts. American Manufacturers Mutual Ins. Co. v. American Broadcasting-Paramount Theatres, 388 F.2d 272, 279 (2d Cir. 1967); Empire Electronics Co., Inc. v. United States, 311 F.2d 175, 180 (2d Cir. 1962). Moreover, where credibility is important and "proof is largely in the hands of the alleged conspirators," the benefits of trial examination may warrant denial of a summary judgment motion. Poller v. Columbia Broadcasting System, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). See also Colby v. Klune, 178 F.2d 872, 873 (2d Cir. 1949); Arnstein v. Porter, 154 F.2d 464, 471 (2d Cir. 1946). Nevertheless, an opposing party cannot merely rely on hope or suspicions but must make some affirmative showing that there is such an issue existing. Ashwell & Co. v. Transamerica Insurance Co., 407 F.2d 762, 766 (7th Cir. 1969); Waldron v. Cities Service Co., 361 F.2d 671 (2d Cir. 1966), aff'd sub nom. First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); Erickson v. Said, 42 F.R.D. 170 (S.D.N.Y.1967).

Applying these principles to the defendants' first contention it is clear that they have not sustained their burden. A genuine issue of fact exists as to whether they violated 15 U.S.C. § 78o(c) (2). While all, in their depositions, denied being involved in any joint arrangement, a brief summary of their testimony indicates that permissible inferences from what they admitted might support a contrary conclusion.

The stock involved, American Continental Industries, was apparently worthless when the various broker-dealer defendants listed it. From the depositions it appears that the listing and trading of the stock by the various defendants was initiated by Michael LaMarca, a confederate of Mr. Robert L. Taylor—the borrower in the instant case. He contacted traders at Alessandrini & Co., Inc. and at Wellington Hunter Associates and encouraged them to make a market in American Continental Industries by indicating his interest in that stock. Both of these defendants did enter the "pink sheets" in this stock and over the ensuing months acted as both brokers and dealers for various transactions. Neither admitted to receiving from Mr. LaMarca any financial information concerning this company although Alessandrini did indicate a desire to see a balance sheet and the trader for Wellington Hunter knew that Mr. LaMarca had been suspended as a broker-dealer for "some alleged infraction."

The trader at Alessandrini also contacted traders at Philip S. Budin & Co., Inc. and at L. B. Meadows & Co., Inc. and suggested that they also make a market in the stock of American Continental Industries. Each did, but after several months of trading, as brokers and as dealers, both of these defendants ended up in a net position—they were left holding none of these worthless shares. It is not clear from the depositions whether or not the other defendants also eventually reached this position.

During this period, when these various defendants were making a market, some of their trades were with each other. Alessandrini, in its deposition admitted to dealing in the shares with all the other defendants; Wellington Hunter admitted to one transaction with a co-defendant—Philip S. Budin & Co.; Philip S. Budin's ledger sheet indicates numerous transactions with Alessandrini and one with Wellington Hunter; L. B. Meadows' ledger sheet shows numerous transactions with Alessandrini. Other information concerning the various dealings of Alessandrini remains to be supplied since various blanks were left in its depositions.

It is possible that a trier of fact would consider this evidence as indicating only normal over-the-counter dealings involving nothing more sinister than an exchange of tips between friendly brokers. This is not an inevitable conclusion, however. A trier might well infer that there was an illegal connection among these various defendants, either as a group or through separate arrangements between individual defendants. Evaluation of the various witnesses' credibility may well be critical. A trial with a full presentation of evidence is necessary to resolve this factual issue.

Defendants' final contention is that the Bank could not, as a matter of law, rely on the "pink sheets." Initially they argue that the Bank's alleged violation of Regulation U. of the Federal Reserve Board (12 CFR § 221 covering loans using securities as collateral), by failure to have the borrower fill out a required form, bars recovery. Such a failing is causally unrelated to the Bank's reliance or loss. Compliance would not have revealed any additional material information about either the borrower or American Continental Industries. At most, for purposes of this case, the infraction is some evidence that the Bank acted hastily and unreasonably.

This leads to what is really the defendants' central argument on this point —that the Bank acted so unreasonably that it cannot recover. Such a requirement of reasonable reliance exists in securities cases by virtue of the materiality rule. A recovery is permitted only if a reasonable man would consider the fact misrepresented material—if he would attach importance to it "in determining his choice of action in the transaction in question." List v. Fashion Park, Inc., 340 F.2d 457, 462 (2d Cir.), cert. denied, 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965), quoting from Restatement of Torts § 538(2)(a); see also Kohler v. Kohler Co., 319 F.2d 634, 642 (7th Cir. 1963) ("those facts * * * which in reasonable and objective contemplation might affect the value of the * * * stock or securities * * * not * * *

details that would not influence the person's judgment. * * * "); F. Harper and F. James, The Law of Torts 565–67 (1956). It must be kept in mind that banks, speculators and other sophisticates in stock transactions as well as the innocent, unknowing or conservative investor are protected by the securities laws. See Lehigh Valley Trust Co. v. Central National Bank of Jacksonville, 409 F.2d 989 (5th Cir. 1969); Securities and Exchange Commission v. Texas Gulf Sulphur Co., 401 F.2d 833, 849 (2d Cir. 1968), cert. denied sub nom. Coates v. Securities and Exchange Commission, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969); Can-Am Petroleum Co. v. Beck, 331 F.2d 371, 373 (10th Cir. 1964) (protected though partially involved in illegality); but cf. Kohler v. Kohler Co., 319 F.2d 634, 641 (7th Cir. 1963) (indicating a plaintiff with special knowledge may have a duty to investigate).

Pointing to the fact that "pink sheets" do not reflect actual sales and only obligate the listing broker-dealer to a one hundred share transaction, defendants claim that no bank could reasonably rely on the existence of four such quotations in accepting 10,000 shares as collateral. To support their contention that such reliance would violate norms of standard banking practice they offer only a textbook on banking. W. H. Baughn and Charles Walker, The Bankers' Handbook 398 (1966). Cf. Burns, Over-The-Counter Market Quotations: Pink, Yellow, Green and White Sheets—A Gray Area in the Law of Evidence, 52 Cornell L. Q. 262, 263 (1967) ("A dealer * * * will want to ascertain at a given time * * * the size of the market (i. e., the number of shares available for purchase or sale) * * * "). Plaintiff, on this point, has presented an affidavit by one of its officers stating that such reliance is its normal practice in these situations.

The defendants' argument seems persuasive, but only as argument to a trier of fact and not in deciding that no genuine issue of fact exists for purposes of summary judgment. It is true that "pink sheets" are only an imperfect source of

**1346**

over-the-counter information (Fistel v. Christman, 135 F.Supp. 830, 831 (S.D. N.Y.1955)), but they are widely used. While isolated quotations may be of no significance, "[t]here is a direct correlation between the number of broker-dealers inserting two-way quotations in a particular security and the volume in that security." Burns, Over-The-Counter Market Quotations: Pink, Yellow, Green and White Sheets—A Gray Area in the Law of Evidence, 52 Cornell L.Q. 262, 268–69 (1967). Whether the existence of four such listings is of sufficient significance to a reasonable bank to warrant the acceptance of 10,000 shares of a stock as collateral for a $30,000 loan is a question of fact best left to the trier to decide on the basis of a full record. *See* Rogen v. Ilikon Corp., 361 F.2d 260, 265–269 (1st Cir. 1966); Weitzen v. Kearns, 271 F.Supp. 616, 620 (S.D.N.Y.1967) (issue of materiality not well adapted to summary judgment).

## IV.

Since plaintiff has stated a cause of action under the Securities Act of 1934 and there are genuine issues of fact, defendants' motions are denied.

So ordered.