Isadore BLAU, a stockholder of Air-Way Industries, Inc., suing on behalf of himself and all other stockholders similarly situated and on behalf of and in the right of Air-Way Industries, Inc., Plaintiff,

v.

Edward LAMB, Frank C. Oswald, Edward Lamb Enterprises, Inc., Edward Lamb Foundation, Inc., and Air-Way Industries, Inc., Defendants.

United States District Court
S. D. New York.
June 4, 1958.

See also 20 F.R.D. 411.

curities and Exchange Act of 1934, 15 U.S.C.A. § 78p(b), which provides that short-swing profits in the securities of a corporation made by "insiders" are recoverable for the benefit of the corporation.

Here a stockholder of Air-Way Industries, Inc., a Delaware corporation, hereafter referred to as "Air-Way", sues under Section 16(b) on behalf of that corporation to recover for its benefit from the individual and corporate defendants, alleged "insiders", profits realized by them from alleged short-swing trading in securities of the corporation within periods of less than six months. Both sides have moved for summary judgment.

■ The common stock of Air-Way was listed and traded in on the American Stock Exchange, a National Securities Exchange. Plaintiff, as a stockholder of Air-Way, is entitled to maintain the action in its name and in its behalf. There seems to be no question that prior to the commencement of the action demand to institute suit against the defendants was made on Air-Way by plaintiff and was refused upon the ground "that a suit as requested would be baseless".

■ The individual defendants, Lamb and Oswald, who are both citizens and residents of Ohio, were officers and directors of Air-Way at the time of the transactions in question and were therefore "insiders" within the purview of Section 16. The corporate defendant, Edward Lamb Enterprises, Inc., hereinafter referred to as "Enterprises", is an Ohio corporation, with its principal office in Toledo, and was the beneficial owner of more than 10% of the common stock of Air-Way. It is therefore also an "insider" under Section 16. Defendant, Edward Lamb Foundation Inc., hereinafter referred to as "Foundation", is a nonprofit charitable corporation organized under the laws of Ohio, with its principal offices in Toledo. While plaintiff claims that Foundation is directly or indirectly the beneficial owner of more than 10% of

———◇———

Morris J. Levy, New York City, for plaintiff.

Irving Mariash, New York City, J. Howard McGrath, Washington, D. C., Fred A. Smith, Toledo, Ohio, for defendants.

FREDERICK van PELT BRYAN, District Judge.

This case involves the construction and application of Section 16(b) of the Se-

the common stock of Air-Way, Foundation denies this and there is thus an issue as to whether it comes within the purview of the statute.

Plaintiff's claims are twofold.

The most substantial questions are presented by the claim that defendants realized profits from short-swing purchases and sales of the preferred stock of Air-Way. These transactions involve the acquisition of Air-Way convertible preferred by the defendants in exchange for the stock of Lamb Industries, Inc., another Ohio corporation, which they controlled, and the subsequent conversion of the preferred into the common stock of Air-Way. It is alleged that Oswald realized profits from these transactions of $76,500, Enterprises of $1,368,417.37, Lamb of $202,717.50, and Foundation of $112,674.

Plaintiff also asserts that defendants Lamb, Enterprises and Foundation have realized certain recoverable profits by virtue of short-swing purchases and sales or sales and purchases of Air-Way common stock. These transactions are relatively minor. Lamb's short-swing profits from these transactions are alleged to have been $2,067.96, Enterprises' $6,071.-10, and Foundation's $6,705.15.

The major preferred stock transactions raise substantial questions of fact and law and will be examined first. The facts concerning these transactions on which the respective parties rely, as they appear from the papers now before me, are as follows:

In June 1955 the individual and corporate defendants were large stockholders of Lamb Industries, 97% of the stock of which was owned by defendant Lamb, members of his family, and companies which they controlled. The same interests owned more than 43% of the outstanding common stock of Air-Way.

On June 9, 1955, Air-Way made an offer to the Lamb Industries stockholders and to the holders of outstanding options to purchase Lamb Industries stock, to exchange one share of Air-Way 5% voting cumulative convertible perferred for each five shares of no par value common stock of Lamb Industries outstanding or issuable upon exercise of options. It is stated that this offer was "for investment purposes only and not for resale", though the nature and extent of such alleged restrictions do not appear. The action of the Board of Directors of Air-Way in making the offer is said to have been unanimously ratified and approved by the Air-Way shareholders at "the next annual meeting" which occurred some ten months later in March 1956. The minutes of this meeting are not in the record.

On June 10, 1955, the shareholders of Lamb Industries voted in favor of the exchange which is alleged to have been a tax free exchange under the Internal Revenue Code.

During the summer of 1955 the defendants, in pursuance of the offer, exchanged the Lamb Industries common stock which they then held for Air-Way preferred at the five to one ratio provided in the offer. In addition to their common stock holdings defendants Lamb and Oswald, who were officers of Lamb Industries, held certain restricted employee incentive options to purchase Lamb Industries common at the price of $6 a share issued to them in August of 1954. Lamb and Oswald exercised their options by purchasing Lamb Industries common stock, to which they were entitled, at the option price and then exchanged the Lamb Industries stock thus acquired for the Air-Way convertible preferred under the terms of the offer.

As a result of all these transactions Oswald acquired 2,000 shares of Air-Way preferred, Lamb 5,260 shares, Enterprises 34,589 shares, and Foundation 2,-848 shares.

The Air-Way 5% voting cumulative convertible preferred exchanged for Lamb Industries common had a $50 par value and could be called for redemption by the corporation at a price of $52.50 per share plus accrued and unpaid dividends. It was convertible into Air-Way common at the ratio of 3½ shares of common for each share of preferred. It

was a "protected" convertible, being fully protected against dilution by the provision that if at any time the number of Air-Way common shares outstanding should be increased or decreased the number of common shares into which the preferred was convertible should be proportionately increased or decreased.

On August 1, 1955, Air-Way filed a listing application with the American Stock Exchange, approved on August 9, 1955, to list an additional 210,000 shares of common which specifically stated that these shares were provided for the conversion of the Air-Way preferred issued in exchange for Lamb Industries common into Air-Way common.

During September 1955 the defendants, in a series of transactions, exercised their conversion privilege by exchanging the Air-Way convertible preferred which they had acquired for Air-Way common at the ratio of 3½ shares of common for each share of preferred as provided in the preferred certificates. In at least one instance the exchange of Lamb Industries common for Air-Way preferred and the conversion of the Air-Way preferred into Air-Way common occurred on the same day.

Plaintiff asserts that these virtually undisputed facts conclusively establish that the defendants are liable under Section 16(b) as a matter of law and that he is therefore entitled to summary judgment in his favor. Defendants, on the other hand, insist that the undisputed facts conclusively establish that there is no liability and that they are entitled to summary judgment. I do not agree with either. I think that there are issues which require a trial and that both motions for summary judgment must be denied.

■ In order to establish defendants' liability under 16(b), it must be shown, in addition to proof that each was an "insider" within the meaning of the section, (1) that each defendant made a purchase and sale or sale and purchase of any equity security of the corporation within a period of less than six months, and (2) that a profit was realized by each defendant from such purchases and sales or sales and purchases.

■ Even if it be assumed that plaintiff has conclusively established that the preferred stock transactions constituted purchases and sales within the meaning of Section 16(b), (and this is by no means free from doubt), he has certainly failed to establish that profits were realized from them. There is no proof in the record now before me that defendants realized any profits on the preferred stock transactions and they deny that they did so.

There is no proof of the price paid by the defendants for the preferred stock which they acquired, or, to put it another way, the cost of such stock to the defendants. The cost of the Air-Way preferred to the defendants is measured by the fair market value of the Lamb Industries common exchanged therefor at the time of the exchange.

Plaintiff asserts such a fair market price is established by purchases of substantial blocks of Lamb Industries common between April 30, 1955 and September 15, 1955, by defendant Lamb at a price of $6 per share. However, these shares appear to have been acquired by Lamb through the exercise of the employee options which had been issued to him by Lamb Industries in August of 1954 and which gave him the right to purchase this amount of common from the corporation at the fixed price of $6 per share. In so far as appears from this record these purchases are no indication of the fair market value of Lamb Industries common at the time of its exchange for the preferred. There is nothing to show that the option figure was then the equivalent of the fair market value of Lamb Industries common, or, indeed, any measure of its then value at all.

Plaintiff says that the consideration received by the defendants for the "sale" of the Air-Way preferred upon its conversion into common was the value of the common as measured by the price at

which it was then selling on the American Stock Exchange. Thus, says the plaintiff, the "price" which defendants received upon the "sale" of their preferred is merely a matter of mathematical computation. But this does not help the plaintiff. The selling price alone can scarcely be determinative of whether or not a profit was realized when there is no purchase price or cost with which it can be compared.

The question of whether defendants realized profits on these transactions is a substantive question fundamental to plaintiff's recovery. It is not merely a question of damages which can be resolved upon an accounting. Cf. Fistel v. Christman, D.C.S.D.N.Y., 135 F.Supp. 830. For example, if it appeared that defendants had purchased equity securities of Air-Way and sold them within six months at a loss, Section 16(b) would not apply and the defendants would have no liability under that section.

Since plaintiff has failed to establish that defendants realized any profits on the preferred stock transactions, his motion for summary judgment on this branch of the case must be denied for this reason alone.

On the other hand, neither have defendants shown, on their cross-motion, that they are entitled to judgment on the preferred stock transactions as a matter of law. Apart from the question of profits realized, the principal questions on this branch of the case are whether the exchange of Lamb Industries stock for Air-Way preferred was a "purchase" of the preferred, and whether the subsequent conversion of the Air-Way preferred into Air-Way common was a "sale" of the preferred, both within the meaning of Section 16(b).

In Park & Tilford v. Schulte, 2 Cir., 160 F.2d 984, certiorari denied 332 U.S. 761, 68 S.Ct. 64, 92 L.Ed. 347, the Court of Appeals of this Circuit held that, under the circumstances presented there, conversion of preferred into common was a *purchase* of the common within the

meaning of Section 16(b). The Court said (160 F.2d at page 987):

"We think a conversion of preferred into common stock followed by a sale within six months is a 'purchase and sale' within the statutory language of § 16(b). Whatever doubt might otherwise exist as to whether a conversion is a 'purchase' is dispelled by definition of 'purchase' to include 'any contract to buy, purchase, or otherwise acquire.' § 3(a) (13). Defendants did not own the common stock in question before they exercised their option to convert; they did afterward. Therefore they acquired the stock, within the meaning of the Act. The Act certainly applies as well to executed acquisitions as to executory contracts to acquire. Not otherwise could the Act accomplish the Congressional purpose to protect the outside stockholders against at least short-swing speculation by insiders with advance information. Smolowe v. Delendo Corporation, supra, 2 Cir., 136 F.2d 231, 235, 148 A.L.R. 300; Kogan v. Schulte, D.C. S.D.N.Y., 61 F.Supp. 604."

In Roberts v. Eaton, 2 Cir., 212 F.2d 82, 83, certiorari denied 348 U.S. 827, 75 S.Ct. 44, 99 L.Ed. 652, the court, in reviewing the cases involving the meaning of "purchase" and "sale" as used in Section 16(b), referred again to Park & Tilford as holding "that voluntary conversion of convertible preferred stock into common was a 'purchase'". In Shaw v. Dreyfus, 2 Cir., 172 F.2d 140, at page 142, certiorari denied 337 U.S. 907, 69 S.Ct. 1048, 93 L.Ed. 1719, the court indicated that the conversion of preferred into common would also be considered a "sale" within the meaning of Section 16(b), stating:

"* * * In Park & Tilford v. Schulte, 2 Cir., 160 F.2d 984, 987, we said that 'The Act certainly applies as well to executed acquisitions as to executory contracts to acquire.' But the acquisition there under con-

sideration was one similar to a purchase. Schulte exercised an option to convert his preferred stock into common stock. Similarly, we would hold that the Act applies as well to executed dispositions as to executory contracts to dispose, provided the disposition is similar to a sale. * * * "

The definition in the Securities Exchange Act of the terms "sale" and "sell" "include any contract to sell or otherwise dispose of", just as the terms "buy" and "purchase" each "include any contract to buy, purchase, or otherwise acquire". 15 U.S.C.A. § 78c(13, 14). These definitions must be applied so as to "accomplish the Congressional purpose to protect the outside stockholders against at least short-swing speculation by insiders with advance information." Park & Tilford v. Schulte, supra.

Defendants argue, however, that the conversion under consideration here, in contrast to that in Park & Tilford, did not constitute a sale under these definitions. They point to the fact that the Air-Way convertible preferred, unlike the preferred in Park & Tilford, was a fully protected convertible keyed to a fixed proportion of the common shares outstanding into which it could be converted. If at any time additional Air-Way common was issued the number of common shares into which the preferred was convertible was proportionately increased and there was a proportionate decrease if the number of shares of common were decreased. In Park & Tilford the preferred was not so protected against dilution.

Defendants point out, furthermore, that, while in Park & Tilford the value of the preferred had been frozen by a call for redemption on a fixed date, there was no such freezing of value in the case at bar. Here defendants assert, the value of the preferred remained keyed to the common into which it could be converted at any time, and the value of the common was at all times ascertainable by the price at which it sold on the American Stock Exchange. Thus, say

defendants, the value of the preferred could never fall below that of the common though, of course, it might exceed the value of the common.

Defendants therefore contend that the conversion of the Air-Way preferred into common was merely an exchange of one equivalent value for another, and that there was no opportunity for making the short-swing profits contemplated by the Act. They liken the conversion to the "mere transfer between * * * pockets" which was held not to be a sale in the first branch of Blau v. Mission Corp., 2 Cir., 212 F.2d 77, 80, certiorari denied 347 U.S. 1016, 74 S.Ct. 872, 98 L.Ed. 1138, rather than the transaction held to be a "sale" in view of the possible differential between the intrinsic value of the preferred and the prices at which the common was traded under the second branch of the Mission case.

It may well be, as defendants contend, that all voluntary conversions of preferred into common are not sales of the preferred within the meaning of 16(b). Cf. Ashland Oil & Refining Co. v. Newman, D.C.N.D.Ohio E.D., 163 F.Supp. 506. But I do not think that the defendants have established as a matter of law that the conversion of their preferred into common was not a sale. The fact remains that the conversion of the preferred was voluntary and that the common which was acquired through the conversion was publicly held and may well have had an independent value in a preexisting market.

Even less have defendants established as a matter of law that their acquisition of the Air-Way preferred in exchange for Lamb Industries common was not a purchase, or that it came within any of the exemptions provided by Rules X-16 (b)-3 or X-16(b)-6 of the Securities & Exchange Commission. 17 C.F.R. §§ 240.16(b)-3, 240.16(b)-6. Cf. Blau v. Hodgkinson, D.C.S.D.N.Y., 100 F.Supp. 361; Blau v. Mission Corp., supra; Fistel v. Christman, supra.

As Chief Judge Clark pointed out in Roberts v. Eaton, supra (212 F.2d at page 84), the courts have "haltingly

\* \* \* endeavored to effectuate the statutory mandate to curb insider short-swing speculation. The lines to be drawn become increasingly fine. \* \* \* "

In determining where the lines must be drawn no one of the factors standing alone is sufficient to immunize the transactions from application of the statute. It is the cumulative effect of the transactions and the basic question of whether or not the transactions could possibly lend themselves to the speculations encompassed and proscribed by Section 16(b) which are controlling. Roberts v. Eaton, supra.

It seems to me apparent that in cases involving short-swing transactions which do not fall squarely within cases thus far decided, it is essential that all facets of the transactions be fully explored so that every factor which would bear on the basic questions presented can be considered. The papers before me contain only selected portions of the corporate minutes of Air-Way upon which defendants rely to sustain their position. It may well be that there are other portions of the minutes and other records, as well as oral testimony, which might shed further light on these transactions.

All this indicates the desirability of a trial on the issues of whether or not the preferred stock transactions constituted purchases and sales which came within Section 16(b) as well as on the issue as to whether profits were realized from them by the defendants. These include the question of whether these transactions could have lent themselves to the type of speculation covered by the section.

There are other issues beside these which require trial. For example, there is the issue of fact to which I have previously referred as to whether or not defendant Foundation was an "insider" within the meaning of the statute. As to the relatively minor common stock transactions defendants assert that plaintiff is mistaken in his claim that they come within the purview of Section 16 (b) because no effect is given to a 100% stock dividend declared on the common. However, the facts as to the alleged stock dividend, and when and under what circumstances and upon what terms it was declared, have not been placed before the court. It is impossible to determine what, if any, effect this may have on the plaintiff's claim with respect to the common stock transactions, or whether it may reduce all or any part of them beneath the $3,000 exemption provided by Rules X-16(a)-9 and 10 of the Securities and Exchange Commission, 17 C.F.R. § 240.16(a)-9 and 10.

In addition to all this there are questions relating to jurisdiction which are left unresolved in the papers now before me. As Judge Dimock said in denying a prior motion to dismiss on the ground that the court had no jurisdiction of the subject matter or of the defendants, there is an issue of fact on these questions which must be left to trial for determination. He pointed out that "If it should there appear with respect to any defendant that he had indulged in no short swing transaction within this district the claim with respect to him would have to be denied even though it were proved that he profited from short swing transactions elsewhere". 20 F.R.D. 411, 414. The papers before me do not attempt to deal with these questions.

It is plain that there are a number of issues of fact which require a trial. To attempt to isolate and decide other related issues on this incomplete record would not be in furtherance of sound judicial administration, nor would it afford the best means of doing ultimate justice between the parties. Both plaintiff's motion for summary judgment, and defendants' cross-motion for summary judgment are therefore denied. Cf. Arnstein v. Porter, 2 Cir., 154 F.2d 464; Doehler Metal Furniture Co. v. United States, 2 Cir., 149 F.2d 130.