CHAMPION HOME BUILDERS CO., a Michigan corporation, Plaintiff,

Joseph L. Kramer and Beatrice F. Kramer, Intervenor-Plaintiffs,

v.

Etson B. JEFFRESS, Defendant.

Civ. A. No. 32106.

United States District Court,
E. D. Michigan, S. D.

Nov. 26, 1974.

Oscar Markus, Troy, Mich., for plaintiff.

Pomerantz, Levy, Haudek & Block, New York City, Michael C. Kovaleski, Warren, Mich., for intervenor-plaintiffs.

Robert A. Jenkins, Detroit, Mich., James C. Sargent, Whitman & Ransom, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

The defendant, Etson B. Jeffress, has been held liable for short swing profits resulting from his sale of 25,000 (50,000 after a split) shares of stock in Champion Home Builders Company ("Champion") on September 12, 1968. He acquired the shares from Champion on April 17, 1968 in exchange for all the shares of Concord Mobile Homes, Inc., ("Concord") which he owned. The Court of Appeals, in Champion Home Builders Co. v. Jeffress, 490 F.2d 611 (6th Cir. 1974), held Jeffress was an insider pursuant to Section 16(b) of the Securities Exchange Act of 1934 and remanded the case to this court for a determination of the extent of his liability, including whether or not he could set off against the liability a claim against Champion for fraud under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 of the Securities and Exchange Commission. He contends Champion violated the statute and rule by not disclosing, at the time of sale, that he would be required to give back to Champion any profit realized from any sale of his stock in Champion which he had not held for more than six (6) months after his purchase of the Champion stock on April 17, 1968.

There are two issues before the court:

1. The determination of Jeffress' liability to Champion as a result of the sale within six (6) months from his date of purchase of the Champion stock in violation of Section 16(b) of the Securities Exchange Act of 1934; and

2. The determination of whether such amount could be claimed back against Champion as a result of a failure on the part of Champion to comply with its alleged obligitation under Rule 10b–5 of the Securities and Exchange Commission and Section 10(b) of the Securities Exchange Act of 1934.

### Liability Under Section 16(b)

On April 17, 1968, Jeffress acquired 105,000 shares of Champion stock in exchange for 100% interest in Concord, which he owned. This was a $13\frac{1}{8}\%$ interest in Champion. Prior to sale, the Champion stock was split 2 for 1. Jeffress then sold within six (6) months after the April 17, 1968 purchase date (September 12, 1968), 25,000 of the original shares before the split (50,000 of the split shares) for $1,880,000 as a part of a public offering. This was 23.81% of the Champion stock he acquired on April 17, 1968. While he held the shares a dividend was declared on the 25,000 original Champion shares (50,000 split shares) amounting to $4,000.

To determine the profit on the September 12, 1968 sale, knowing the amount of Champion shares he received, it is necessary to determine the value of what he gave in exchange for the Champion shares sold on April 17, 1968. Blau v. Mission Corp., 212 F.2d 77, 81 (2d Cir. 1954); Park & Tilford v. Schulte, 160 F.2d 984 (2d Cir. 1947); Mueller v. Korholz, 449 F.2d 82 (7th Cir. 1971); Fistel v. Christman, 135 F. Supp. 830 (S.D.N.Y.1955); Allis-Chalmers Mfg. Co. v. Gulf & Western, 372 F.Supp. 570 (D.C.N.Ill.1974). Since the Champion shares sold on September 12, 1968 equalled 23.81% of the Champion shares acquired on April 17, 1968, and since the sole consideration for the Champion shares acquired on April 17, 1968 was 100% of the Concord shares, the profit on the September 12, 1968 sale will be $1,880,000, less 23.81% of the value of Concord as of April 17, 1968, the date of the acquisition.

Four distinguished financial analysts provided assistance to the court in determining the value of Concord on April 17, 1968:

Martin J. Whitman, lecturer on securities valuation at various universities, for the intervenor-plaintiffs; Douglas A. Hayes, Professor of Finance, University of Michigan, for the plaintiff;

Baird P. Swigert, Research Analyst, Watling Lerchen & Co., for the plaintiff;

and

Douglas H. Bellemore, Senior Professor of Business, New York University, for the defendant.

All the experts agreed the use of book value or replacement value of the underlying assets of Concord are not accepted theories to measure the going concern value of Concord, which is what Jeffress gave up in his exchange of Concord for Champion stock on April 17, 1968. Although the experts offer the court a number of different methods for determining the value of Concord as a going concern they can generally be consolidated into three different approaches, each of which has a number of different procedures for determining value.

The three approaches and the different procedures used are:

I. Earnings and the Capitalization of those Earnings.
   A. Determining prospective earnings:
      1. Use past earnings history as a means of predicting future earnings.
      2. Use a direct estimate of future earnings.
   B. Determining the factor for capitalization:
      1. Using the market place value of comparable public offerings.
      2. Making an estimate based on the wisdom and skill of the expert.

II. Market Determination of Value.

A. Market value of Champion stock as of April 17 1968.
B. The increase in the value of Champion stock as a result of the announcement for the purchase of Concord.

III. Contribution of Concord to Champion—Stream of earnings and the filling out of its total marketing plan.

The consensus of views of the financial analysts is that no one method can be used to determine the value of a closely held company and that many factors must be taken into consideration before the value of that company can be determined. All the experts, in one way or another, have injected their judgment, based on their experience, to soften or modify the formula they used to determine value. Since all but one of the financial analysts have used more than one method of determining value, and have then averaged their several methods in one way or another, it seems appropriate for the court to approach the problem in the same way.

*Capitalization of Earnings*

All the experts believe capitalization of earnings is an important and effective input to the process of value determination. They disagreed, however, on two important ingredients of the process:

A. The earnings to be capitalized. Some experts suggest the best method of estimating the earnings to be capitalized is to use the past earnings as a prediction of future earnings. On the other hand, other experts suggest that because the industry had turned around and was in a boom period on April 17, 1968, the estimate of next year's earnings should be used.

B. The capitalization factor. The mobile home industry had an average price/earnings capitalization factor of 33 or better on April 17, 1968. The Standard & Poors' and Dow Jones' general capitalization factor was 17 or 18. All of the experts, however, tended to

take a conservative approach to capitalization by bringing the price/earnings multiplier to earnings down somewhere near or below the Standard & Poors' ratio for the industry as a whole. The various price/earnings ratios applicable to Concord, according to the expert witnesses, were 12 (Whitman), 15 (Bellemore), 15.62 (Hayes) and 18 (Swigert). These price/earnings ratios were largely determined on a judgmental basis by all of the experts after they took into account various factors such as: the relative size of Concord; the financial condition of Concord; the earnings history of Concord; the growth potential of Concord; the price/earnings ratios of companies comparable to Concord; the growth status of the mobile home industry at the time, and; the enthusiastic reception by market investors for mobile home stocks at the time. The conservative nature of the approach to capitalization by all the experts was based on Concord's weak capital position and its lack of adequate management.

The court feels only Professor Hayes provided a rational method to, determine the factor by which the earnings of Concord should be capitalized in this case. Mr. Whitman seemed to arrive at his factor through his intuition and general expertise. Professor Bellemore used the Standard & Poors' and Dow Jones' indexes. Professor Hayes, on the other hand, provided a sophisticated analysis of how to reach a factor that would be supported in the market place. He selected other comparable firms in the mobile home industry which went public and issued stock at a time when adjustments could be made to relate to April 17, 1968. He found five such firms. He determined the market price of the newly offered shares after the market in each instance had been stabilized. He then determined the price/earnings ratio using this price and the last year's earnings. He adjusted the price/earnings ratio by multiplying it by the ratio of the Standard & Poors' mobile home builders price/earnings ratio index on April 17, 1968, and that same index for the date used as the basis for the stabilized value of each offering. He then averaged the five adjusted price/earnings . ratios. This came to 15.62 which he applied to the Concord earnings ($293,021.77) for the year 1968, making a value of $4,577,000.

The Concord 1969 estimate of earnings of $500,000 is more than of passing interest in determining the value of Concord as of April 17, 1968. First of all, the experts indicate solid estimates of earnings provide a more accurate basis for capitalization than past history of earnings. They reason that the going concern value of a company at a given point in time depends on what the company will earn in the future. They are attempting to capitalize those future earnings. Past earnings are only used as one method of estimating possible future earnings. In this case there was an indication the mobile home industry had turned around from some previously bad years, and was becoming more profitable at the time of this sale. In addition, the estimate of $500,000 profit for 1969 was a figure used by the parties as a basis for their negotiation for sale of Concord to Champion in early 1968. It was used at a time when the parties were trying to arrive at the number of shares of Champion that could be given to Mr. Jeffress in exchange for his company without diluting the value of Champion stock. It seems reasonable to give consideration to this figure in arriving at the valuation of Concord. Applying the Hayes capitalization factor of 15.62 to the $500,000 estimated earning for 1969, we get a valuation of $7,810,000. An average of the two capitalized figures (the capitalized value of 1968 earnings and the capitalized value of the projected 1969 earnings) gives a valuation of $6,193.-500 for Concord.

*Market Determination of Value*

Concord was exchanged for 105,000 shares of Champion. The market price of 105,000 shares of Champion on April 17, 1968 was $4,029,000. The Champion

shares received by Jeffress were lettered shares. There is testimony that lettered shares having restricted marketability would tend to have a lesser value than unlettered stock. There is also testimony that the size of the block of Champion stock involved in this case would tend to offset this reduction in value. What Mr. Jeffress really received on April 17, 1968 was a $13\frac{1}{8}\%$ interest in Champion. This interest was sufficient to enable him to become a director and elected corporate secretary of Champion. It does not seem reasonable in this case to depreciate the value of his stock because it was lettered in determining the value of Concord. I will accept the figure of $4,029,000 as one indication of the market value of Concord.

A second method of the market's estimate of value of Concord is to ascertain the increase in value of the stock as a result of the public announcement made on February 20, 1968. In the week following that announcement, the 700,000 shares of Champion stock increased in value by $5,250,000, an increase not reflected in the rest of the market. This, according to the testimony, is an indication of the market's determination of the value of Concord. Thus, the average of the market's determination of the value of Concord, by looking at Champion shares, is $4,639,-500 ($5,250,000, plus $4,029,000, divided by 2).

### Contribution to Champion

One additional factor should be considered in determining the value of Concord; the value of Concord to Champion on April 17, 1968. The evidence indicates Champion needed Concord. The Concord line of recreational vehicles tended to fill gaps in the Champion line of mobile homes. The consolidated figures of the two companies strengthened Champion's bid to provide needed additional capital through a stock offering.

The value of an acquired firm, is determined in part, by the stream of earnings which it is expected to contribute to the acquiring firm. If investors value the combined firm with the same earnings multiple as they did the acquiring firm, the value of the acquired firm is proportional to its expected earnings contribution to the whole, unless clear evidence of differences between past and future relative earnings exist.

Champion went to the public to sell its offering on September 12, 1968, the sale involved in this case, based on a prospectus consolidating the income of Champion and Concord over a five-year period. Investors, in determining the value of the stock in September, 1968, used a five-year consolidation of earnings. It therefore seems reasonable to use the same five-year period to determine the value of Concord to Champion as of April 17, 1968.

If the acquisition had occurred in 1964, but the individual firms had been operated as separate entities, Concord would have contributed an average of 18.8% of the total earnings during the five fiscal years, 1964 to 1968. The total value of Champion on April 17, 1968, including the new shares issued to Jeffress and assuming the average market price as of April 17, 1968 was $30,891,875 (805,000 shares, times 38.-375, the average market price as of April 17, 1968.) If Concord continued to contribute the past average of 18.8% to earnings in the future, the value of Concord was $5,807,670 ($30,891,875, times .188).

### Summary

As shown before, different methods of valuation of Concord reach different results.

| | |
|---|---|
| Capitalization of Earnings (2 procedures) | $ 6,193,500 |
| Market Determination of Value (2 procedures) | 4,639,500 |
| Contribution to Champion | 5,807,670 |

The experts teach the court to utilize more than one method of deter-

mining the intangible figure indicating the value of the company. They do it themselves. Many more methods have been suggested to the court, one suggesting a value as low as $1,500,000 and another suggesting a value as high as $15,000,000. I have rejected methods that do not seem to be supported by logic or fact, and have developed each of the methods that seem to the court to provide an insight into an indication of value of Concord. Since the experts teach value is apt to be some consolidation of different approaches, it is appropriate to consolidate these disparate indicators of value by averaging them. I find the value of Concord as of April 17, 1968 to be $5,546,890, the average of the three methods held to be appropriate and set out above. I find the April 17, 1968 value of the stock sold by Jeffress on September 12, 1968 to be $1,320,700 (approximately 23.81% times $5,546,890). Thus, the profit on this sale was $559,300 ($1,880,000 minus $1,320,700).

### Dividend

■ The $4,000 dividend paid on Jeffress' Champion stock prior to the time of its sale on September 12, 1968 was a dividend paid in the ordinary course of business in accordance with the long established policy of Champion. It had no relationship to the acquisition by Jeffress of the Champion stock or to the sale of the Champion stock by Jeffress. The $4,000 dividend was not "profit realized . . . from any purchase and sale", Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), but was a distribution of earnings. This is not to say the declaration of a dividend could not be considered profit under the appropriate circumstances, but in this case there were no circumstances indicating the dividend was anything other than a distribution of earnings.

### Interest on the Award

■ The defendant contends the judgment should not carry interest because the transaction was an innocent one on the part of Jeffress.

Section 16(b) was enacted to prevent insiders from retaining profits made on the sale of stock within a six (6) month period after the purchase of the same stock. Kern County Land Co. v. Occidental Petroleum Corp., 411 U.S. 582, 93 S.Ct. 1736, 36 L.Ed.2d 503 (1973); Reliance Elec. Co. v. Emerson Elec. Co., 404 U.S. 418, 422, 92 S.Ct. 596, 30 L. Ed.2d 575 (1972), rehearing den., 405 U.S. 969, 92 S.Ct. 1162, 31 L.Ed.2d 244; Champion Home Builders Co. v. Jeffress, supra, 490 F.2d at 619. The procedure recognized by the statute to carry out this policy is to return to the corporation the profits received by the insider on the sale of any such stock. The statute does not ask whether or not the insider was innocent. It is a rigid statute intending to take from the insider all profit and to make the corporation whole. Jeffress was on notice of the fact that he had violated Section 16(b) as of the date of filing of this action, December 13, 1968, and has had the use of funds properly belonging to the corporation since that time. Therefore, the judgment to be entered in this case shall bear interest from the date of the commencement of this suit. Schur v. Salzman, 365 F.Supp. 725, 734–735 (S.D.N.Y.1973); Perfect Photo Inc. v. Grabb, 205 F.Supp. 569, 573–574 (D.C. Pa.1962).

### Counter Claim under Rule 10b–5

■ Defendant asserts if he is held liable in any amount he is entitled to an equivalent set off against Champion because of Champion's alleged failure in omitting "to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, . . . in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b–5, promulgated pursuant to § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b).

Specifically, defendant contends Champion failed to call to defendant's attention the legal requirement that if he sold any part of his stock within six (6) months from April 17, 1968 he would be required to return to Champion the profit on the sale.

No one involved in the sale thought of any possible liability on the part of Jeffress until after the sale took place. Jeffress was, at the time of the sale of Concord to Champion, represented by competent counsel. Thereafter he became a director and corporate secretary of Champion. He participated in the plans for the public offering in September through which he sold his 25,000 shares. He was represented in the public offering by the same attorney as Champion.

The matter about which disclosure is sought, the possible liability under Section 16(b), is a matter of law equally available to the defendant as well as plaintiff. *See,* Arber v. Essex Wire Corp., 490 F.2d 414 (6th Cir. 1974); Hope v. Hayden-Stone, Inc., 469 F.2d 1060 (5th Cir. 1972); Johnson v. Wiggs, 443 F.2d 803 (5th Cir. 1971); Clement A. Evans & Co., Inc. v. McAlpine, 434 F.2d 100 (5th Cir. 1970); Hafner v. Forest Laboratories, Inc., 345 F.2d 167 (2d Cir. 1965). This is not a case in which the plaintiff hid information from the defendant, nor is it a case in which there were facts in existence that could have been known to the plaintiff but not to the defendant. If the plaintiff had thought of the possible application of Section 16(b) and had omitted to call this application to the attention of the defendant, perhaps a different result might be reached, but such is not the case. This is a case in which the law was equally available to each and equally clear or unclear as to each, without either side having thought of possible liability. This is not a case of Rule 10b–5 liability. The statute, Section 16(b), and the cases applicable thereto were equally available to both parties, and one party did not mislead the other party by failing to mention the statute in the absence of having thought of its possible application. The counter claim is dismissed.

Judgment should be entered against the defendant and in favor of the plaintiff in the amount of $559,300 with interest from December 13, 1968 and costs.

So ordered.