**Richard MORALES, Plaintiff,**

v.

**LIONEL CORPORATION and Ronald D. Saypol, Defendants.**

No. 74 Civ. 800.

United States District Court, S. D. New York.

July 20, 1977.

David Lopez, New York City, for plaintiff.

Kaplan, Kilsheimer & Foley, New York City, for defendant Saypol.

Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for Lionel Corp.

## MEMORANDUM ORDER

BRODERICK, District Judge.

Plaintiff's motion for summary judgment, in an action for recovery of short swing profits under § 16(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78p(b), presents the question of whether securities registered under the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77a *et seq.* are fungible for Section 16(b) purposes with like securities that are not so registered. The individual defendant has cross-moved for dismissal on the basis of lack of prosecution; and in the alternative for summary judgment.

The uncontroverted facts are as follows: The Lionel Corporation ("Lionel") is a corporation whose common stock, at all times relevant hereto, was registered pursuant to Section 12(b) of the Exchange Act, 15 U.S.C. § 78*l* (b), and listed for trading upon the New York Stock Exchange, a "national exchange" within the meaning of that Act. Defendant Ronald D. Saypol ("Saypol") was president and a director of Lionel at all times relevant to this action. During the period from November 1 through November 5, 1971, Saypol sold an aggregate of 4,800 shares of Lionel common stock in ordinary brokerage transactions on the New York Stock Exchange. Upon these sales, Saypol received a net consideration of $23,705.79 ($24,375 gross less $669.21 costs of sale), or

an average of $4.94 per share. On January 11, 1972, Saypol agreed to purchase 100,000 shares of Lionel's unregistered common stock in a private transaction. Under the terms of the agreement, Saypol was to pay $3.00 per share, or a total consideration of $300,000; he had no costs of purchase. He agreed to take the shares for investment purposes, i. e., subject to the restriction that he not sell them until they had been registered under the Securities Act or until counsel for Lionel advised that such registration was not required. On March 22, 1972, Saypol purchased the 100,000 shares of unregistered Lionel common stock pursuant to the January 11 agreement and under the restrictions of the agreement. The average market price of registered Lionel common stock in transactions on the New York Stock Exchange was approximately $6.625 per share on January 11, 1972, and approximately $7.25 per share on March 22, 1972.

Based upon the foregoing facts, plaintiff, an investor in Lionel, made written demand upon Lionel for initiation by it of action against Saypol. When Lionel declined to do so, plaintiff instituted this derivative action, and now moves for summary judgment. Plaintiff asserts that Saypol must account to Lionel for profits amounting to $1.94 per share ($4.94 net sales price less $3.00 net purchase price) with respect to 4,800 shares sold and 4,800 shares purchased within the six month period.

Saypol cross-moves for summary judgment on the ground that the registered shares he sold in November, 1971 are not fungible with the unregistered shares he purchased in March, 1972. Alternatively, he argues that there are material issues of fact in dispute which preclude granting plaintiff's motion for summary judgment.[1]

The purpose of Section 16(b) of the Exchange Act is to prevent the unfair use of information obtained by reason of one's relationship to the issuer. For the purposes of this action, the statute requires (1) that an insider (which includes an officer or director) of a corporation which has issued an equity security registered pursuant to Section 12 of the Exchange Act, 15 U.S.C. 78*l*, surrender to the issuer (2) any profit realized (3) from the sale and purchase or purchase and sale (4) within any period of less than six months (5) of any equity security of that issuer.

The undisputed facts establish that Lionel was an issuer of equity securities registered under Section 12 of the Exchange Act; Saypol was president and a director of Lionel, two positions which under the Exchange Act subject him to Section 16(b) prohibitions; and Saypol engaged in the sale and purchase of equity securities of Lionel within the proscribed six month period. The wrinkle which takes this beyond the classic 16(b) suit is the fact that Saypol sold *registered* securities and purchased *unregistered, restricted* securities.

■ Certainly, an insider should not be permitted to frustrate the purpose of the statute simply by alternately trading in registered securities, and then in unregistered securities. The broad prophylactic function which Section 16(b) serves would, it seems, require that such exercises trigger application of the statute to the trades.

■ Unregistered and registered securities are not deemed non-fungible as a matter of law. *Schur v. Salzman*, 365 F.Supp. 725, 731–732 (S.D.N.Y.1973); *Lewis v. Wells*, 325 F.Supp. 382, 386–387 (S.D.N.Y. 1971); *Alloys Unlimited, Inc. v. Gilbert*, 319 F.Supp. 617 (S.D.N.Y.1970). *Cf., Gratz v. Claughton*, 187 F.2d 46 (2d Cir. 1951). In *Schur v. Salzman*, 365 F.Supp. 725 (S.D.N.Y.1973), Judge Weinfeld, U.S.D.J., rejected an argument regarding fungibility similar to that made by Saypol herein:

Not only in his contention that unregistered stock cannot be matched against the registered stock without substance,

---

1. Saypol suggests two such issues of fact: 1) whether Saypol realized a profit on the transactions of November, 1971 and March, 1972 and if he did realize a profit, what was the amount of profit realized; and 2) whether the securities involved in the November, 1971 sale (registered) and the March, 1972 purchase (unregistered) were fungible as a matter of fact.

*but to sustain this claim would sanction an avenue of escape of the type that insiders from time to time contrive in an effort to retain profits derived from transactions which section 16(b) commands they surrender.*

Id. at 732 (emphasis added).

With respect to Saypol's purchase herein, the value of the restricted shares purchased remains to be determined.[2] Whether Saypol realized *any* profit is a material issue of fact, and the resolution of that issue may determine who succeeds in this action. *Blau v. Lamb*, 163 F.Supp. 528, 532 (S.D.N.Y.1958).[3] Accordingly, the motion and cross-motion for summary judgment are denied.

Defendant Saypol's cross-motion for dismissal of the action for lack of prosecution is also denied. Although this action was commenced in February 1974, and remained inactive from May 1974 until June 1976, it appears today to be active and on track. The period of dormancy, while not condoned, has become history. The severe sanction of dismissal does not seem to be warranted.

SO ORDERED.

---

**2.** The basis for the determination in *Schur v. Salzman* that defendant's argument was specious *in fact* was the apparent lack of difficulty the defendant had in selling his unregistered shares along with those registered, realizing the same profit per share on each type sold. The court did recognize, with respect to unregistered stock, that insiders are not precluded from proving the profit was smaller than that claimed. 365 F.Supp. at 732 n. 25.

**3.** This is not a case in which the existence of profit has been established, although its quantification remains at issue. *See, e. g., Newmark v. RKO General, Inc.*, 294 F.Supp. 358 (S.D.N.Y.1968), *aff'd* 425 F.2d 348 (2d Cir.), *cert. denied* 400 U.S. 854, 91 S.Ct. 64, 27 L.Ed.2d 91 (1970).